**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

---

| | |
|---|---|
| **WANDA JOHNSON** ) | |
| **9120 Georgia Belle Drive** ) | |
| **Perry Hall, MD 21128** ) | |
| ) | **Case No.: 1:23-cv-2215** |
| *Plaintiff,* ) | |
| ) | |
| **v.** ) | |
| ) | |
| **BALTIMORE CITY, MARYLAND:** ) | |
| **BALTIMORE POLICE DEPARTMENT** ) | |
| **242 W 29ᵗʰ St.** ) | |
| **Baltimore, MD 21211** ) | **JURY TRIAL DEMANDED** |
| ) | |
| *Defendant.* ) | |
| ) | |
| **Serve:** ) | |
| ) | |
| **The Baltimore City Law Department** ) | |
| **Office of Legal Affairs** ) | |
| **C/O City Hall, Room 250** ) | |
| **100 N. Holliday St.** ) | |
| **Baltimore MD, 21202** ) | |
| ) | |
| **Baltimore Police Department Headquarters** ) | |
| **601 E. Fayette St.** ) | |
| **Baltimore, MD 21202** ) | |

---

**COMPLAINT FOR EQUITABLE RELIEF AND COMPENSATORY DAMAGES**

COMES NOW, Wanda Johnson, Plaintiff, (hereinafter "Plaintiff") by and through undersigned counsel, and complains against Defendant, Baltimore Police Department, (hereinafter "Defendant" or "BPD") and in support thereof states as follows:

**INTRODUCTION**

1. On August 10, 2016, the Department of Justice published a scathing report about the Baltimore Police Department's widespread constitutional violations, the targeting of

1

African Americans, and a culture of retaliation. And, while the investigation and report focused largely on how Baltimore police abused the law, the people they were meant to serve, and the public trust, the complicit institutional engine that acquiesces in the destruction and demise of BPD's own Black officers and sergeants remains pervasive, continuous, and swept under the rug. *This case is about when the police are fearful of the police—their own brothers and sisters in blue.*

2. This is an action authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq. ("Title VII"); the Civil Rights Act of 1866, Section 1983(a) ("Section 1983"), 42 U.S.C. § 1320d-6 et seq.; and the Maryland Fair Employment Practices Act, Md. Code § 20-601 et seq. (MFEPA) for the Defendant's unlawful harassment, discrimination, and hostile work environment based on race (African American) and retaliation against the Plaintiff.

## JURISDICTION AND VENUE

3. This Honorable Court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. § 1331 as it asserts a claim that arises under the Constitution, laws, or treaties of the United States, specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), et seq., and Section 1983, to redress and enjoin employment practices of the Defendant.

4. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1343.

5. Venue is appropriate because a substantial part of the actions complained of are the result of actions and employment practices of Defendant, which operates in Baltimore, Maryland.

6. Additionally, venue is proper in the District of Maryland Court pursuant to 28 U.S.C. §§ 1391(b) and (e) because a substantial part of the wrongful conduct complained of herein

occurred in this District, Defendants transact substantial business in this District, and Defendants maintain employment records related to this action in the District of Maryland.

## EXHAUSTION OF REMEDIES

7. Plaintiff has exhausted all of her administrative remedies.

8. Plaintiff initiated her administrative process with the Baltimore Field Office of the U.S. Equal Employment Opportunity Commission ("EEOC") in or around December 2020, and filed a Charge on or around February 16, 2021, alleging discrimination based on race (African American) and retaliation.

9. Because over 180 days had elapsed since the EEOC assumed jurisdiction over Plaintiff's complaint, on August 22, 2022 Plaintiff requested the issuance of a Right-to-Sue Letter.

10. In response, the Equal Employment Opportunity Commission ("EEOC") issued Plaintiff a Notice of Right to Sue, which Plaintiff received on May 15, 2023.

11. Accordingly, Plaintiff timely files this action in accordance with the Notice of Rights, which provided Plaintiff the right to file this Complaint within 90 days of receipt of the Notice.

## NATURE OF THE ACTION

12. Plaintiff brings this action to secure protection of rights granted under the statutes mentioned above, to redress deprivation of rights thereunder, and to obtain such other relief as is necessary to redress the injury to Plaintiff resulting from Defendant's violation of those statutes.

13. Plaintiff's damages are significant, including, but not limited to, the loss of reputation, loss of wages due to unlawful and unjustified transfer, loss of career advantage, emotional tranquility, and denial of her constitutional and statutory rights.

14. The action seeks declaratory and injunctive relief, as well as compensatory and punitive damages, both to secure future protection and to redress the past deprivation of rights guaranteed to named Plaintiff.

## PARTIES

15. Plaintiff, Officer Wanda Johnson, is an African American female who resides in Baltimore County.

16. The Baltimore Police Department ("Defendant" or "BPD") is the 8th largest municipal police force in the United States, staffed by nearly 3,100 civilian and sworn personnel. The Department's jurisdiction covers Maryland's largest city, with a population of approximately 611,648 people.

17. Officer Johnson worked at the Baltimore Police Department ("BPD") during the relevant period.

18. During the relevant period, Defendant employed Plaintiff, Officer Johnson.

19. During the relevant period, Plaintiff was Defendant's employee within the meaning, and entitled to the protections of Title VII.

## FACTUAL ALLEGATIONS

20. Plaintiff, Wanda Johnson, is a Police Officer with the Baltimore Police Department (BPD), and has served as an Officer for over 14 years.

21. On or around August 26, 2018, Plaintiff was attending a party in her honor celebrating her marriage to her husband Marcus Johnson, a fellow BPD Officer. During the party, Officer Marcus Johnson was on duty.

22. At about 10:00pm or 11:00pm, the party proceeded to the Norma Jean's Night Club located at 10 Custom House Lane, Baltimore, MD. Upon arrival, the group was escorted to the VIP section that they had purchased for the special occasion.

23. While enjoying themselves in the venue, two (2) younger women entered the group's reserved VIP section and sat on an unoccupied bend in the corner of the sectional sofa. Three (3) members of the entourage informed the women that they had paid for the VIP section and that they needed to leave before Plaintiff returned from the restroom. One of the women indicated that her feet hurt and she would not leave until she was ready. At this point, security was notified and the women were escorted out of the VIP section before Plaintiff returned.

24. Several members of the group were shaken by the confrontation especially because one of the women who had been escorted out continued to cause a commotion outside of the section. Security proceeded to escort the two women who had intruded into the VIP section out of the club.

25. At this time, Ofc. Marcus Johnson was on patrol when he was notified by a friend attending the party about what had ensued. He then contacted his supervisor to request permission to enter the venue and escort Plaintiff to safety.

26. Ofc. Marcus Johnson's supervisor approved his request and he entered the venue, located Plaintiff, and escorted her to safety.

27. At the same time outside of the club further commotion began when Dominique Wiggins, an off-duty police officer and member of the party, observed a police officer, who was later identified as Sgt. Marlon Koushall, exit a marked patrol vehicle and walk over to her and Ms. Middleton. Sgt. Koushall appeared to say something that Det. Wiggins was unable to

hear before striking Ms. Middleton in the face, causing her to stumble away from where they were standing.

28. Det. Wiggins immediately began to yell "Stop! What are you doing?" while running to aid Ms. Middleton. Other police officers who were in the vicinity attempted to stop Det. Wiggins from rendering aid to Ms. Middleton, so she began to yell that they were police officers and Ms. Middleton was a sergeant.

29. At this point, Ms. Middleton was placed against the patrol vehicle and Sgt. Koushall grabbed Ms. Middleton's wrist and stated that she was under arrest.  As Sgt. Koushall was attempting to place Ms. Middleton in handcuffs, Sgt. A. Davis approached the scene and Det. Wiggins explained to Sgt. Davis what had occurred.  Sgt. Davis stated that he would remove Ms. Middleton from the scene given the commotion it was causing.

30. Sgt. Raymond Lloyd of the Internal Affairs (IA) Division responded and interviewed all of the Officers who were at Norma Jean's.

31. Plaintiff complied with IA's every inquiry and request, and no action was taken against her at that time.

32. However, due to the conduct of Sgt. Koushall and BPD's attempts to protect him, instead of attempting to work with Plaintiff, the Internal Affairs Detectives chose to fabricate allegations against Plaintiff and her husband regarding their roles and alleged motives to fabricate statements in the incident.

33. In October 2018, Plaintiff was blocked from transferring to another unit due to the incident.

34. In or around February 2019, Sgt. Koushall was formally charged with assault on Ms. Middleton.

35. In or around June 2019, Plaintiff was notified that she was being investigated in relation to the incident. The investigating detectives charged Plaintiff with making a false statement as they compared minor details between the witness statement she provided that night on August 26, 2018 to another statement she provided on June 4, 2020, nearly two years after the fact. It is clear by their conduct that the investigating officers were not seeking the truth, but were combing the evidence for any inaccuracy in order to substantiate the charges that they wanted to impose on Plaintiff.

36. In or around September 2019, court proceedings were held against Sgt. Koushall, during which Plaintiff testified for the State and Sgt. Koushall was found guilty of assault in October 2019.

37. In or around November 2019, Sgt. Koushall filed an appeal of his guilty verdict. Upon information and belief, Sgt. Koushall was suspended and placed on supervised probation pending the appeal of his verdict, but Defendant ultimately chose to not pursue his removal and instead decided to keep Sgt. Koushall suspended for the remainder of his career. Sgt. Koushall remains employed by Defendant, despite the video evidence of his assault during the incident on a fellow officer, and his conviction in court for the assault.

38. Plaintiff's investigation was given to the State Attorney's Office for assessment of criminal charges, but their office declined to bring charges against Plaintiff and issued two declination letters.

39. Despite these declination letters, Defendant suspended Plaintiff without pay in June 2020.

40. On November 9, 2020, the Circuit Court for Baltimore City found in favor of Plaintiff and ordered that no disciplinary charges could be pursued.

41. Defendant appealed and on October 18, 2021, the Maryland Court of Special Appeals held that the charges brough against Plaintiff were barred because more than one year had elapsed between the alleged misconduct and the charges and that the record did not sustain any suspicion of criminal behavior to toll the statute of limitations.

42. On December 11, 2020, Defendant filed an appeal against the ruling.

43. From May 24–25, 2022, Plaintiff was sent to a trial board hearing in which Defendant attempted to terminate Plaintiff on the basis of alleged violations of BPD policy for assault, false statements, interference with internal investigations, and misconduct in failing to report the altercation to her supervisors, despite the fact that Plaintiff was off-duty when the incident occurred, and consistently denied the allegations.

44. Plaintiff was forced by Defendant to submit her resignation in lieu of termination on June 1, 2022.

45. BPD's targeting of Plaintiff and her husband became abundantly clear and was specifically linked to their involvement in the case against Sgt. Koushall, as well as their status as African American Officers.

46. Plaintiff was shocked that she was immediately moved towards termination and ultimately forced to resign, as in similar cases where White or non-Black Officers and supervisors suspected of misconduct or other severe offenses were not subjected to the same punishment. Examples of comparators include:

- Major James Handley (White/male) called an applicant a "fucking nigger." The case was sustained, but he was given the opportunity to retire without reprimand.

- Lt. William Colburn (White/male) had several sustained DUI cases and a fleeing and eluding police charge. He was ultimately suspended then reinstated with

minimal punishment and allowed to keep his rank. Lt. Colburn has since retired from the Department.

- Officer Jason Zimmerman (White/male) was charged with 'use of force' for punching a male in the face several times who was suffering from a behavioral crisis. Ofc. Zimmerman received no suspension, and instead he received a severe letter of reprimand and a loss of 5 days of leave. Sometime later, Ofc. Zimmerman was suspended awaiting a declination letter for a police officer involved shooting.

- Sgt. Amy Street (White/female) was involved in a domestic related assault with her husband, Sgt. Craig Street. Both officers were suspended, however the trial board hearing was dismissed, and charges were dropped due to what was referred to as an improper investigation by the investigating detective.

47. In October 2022, Plaintiff was informed by a former supervisor that instructors at the Police Academy for a training program for lieutenants were being taught that they should toe the line in voting "guilty" during trial boards, and in particular that Deputy Commissioner Brian Nadeau addressed the class saying that as command staff, if they voted against the recommendation already investigated by Public Integrity Bureau ("PIB") detectives, reviewed by PIB supervisors and a civilian review board, and signed off by the Commissioner's office, they should be prepared to stand in front of the Commissioner himself to explain their decision, and possibly review their command promotion.

48. Plaintiff has been the target of discrimination, harassment, retaliation, and violations of her statutory rights. The aforementioned misconduct was so egregious and pervasive that it has affected the Plaintiff's mental, emotional, and physical wellbeing in irreparable ways.

49. Plaintiff is now forced to file suit due to the Defendant's inability to remedy its unlawful conduct, which has cost Plaintiff significant financial strain as well as emotional distress. Due to the discriminatory and unlawful treatment Plaintiff has undergone, she has experienced lasting harm that is ongoing to this day.

50. The Defendant's discriminatory and unlawful practices have been effectuated in violation of Title VII.

<u>**COUNT I**</u>

**VIOLATION OF TITLE VII - RACE DISCRIMINATION**

51. Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

52. A *prima facie* case of race discrimination requires a showing of four (4) elements: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination.

53. Here, the four (4) elements of a *prima facie* case of race discrimination are met. The Plaintiff is an African American woman and is considered a member of a protected class as stipulated under Title VII of the Civil Rights Act of 1964. Additionally, Plaintiff is a qualified police officer, as she has approximately fourteen (14) years on the force and has had no serious disciplinary issues prior to this incident. The Plaintiff suffered an adverse employment action directly related to her position of being a protected class member as recognized under Title VII of the Civil Rights Act of 1964, when the investigators continued to make false allegations against her that ultimately resulted in charges despite Plaintiff's consistent efforts to assist investigators in every capacity. Finally, the charges

that were brought against Plaintiff were disproportionate in comparison to her actual involvement in the incident, as well as the charges that her colleagues and superiors of different races had brought against them for more egregious offenses.

54. Plaintiff is a member of a protected class as an African American woman.

55. Because of her race, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint in violation of Title VII.

56. Defendants' foregoing unlawful adverse actions materially affected the terms, privileges, and conditions of Plaintiff's employment.

57. Defendant knew that Plaintiff was African American prior to the adverse actions described throughout the Complaint and was aware, or should have been aware, of the discrimination Plaintiff was subjected to because of her race.

58. Plaintiff has been treated differently and subjected to different terms and conditions of her employment due to her race.

59. Defendant had limited and reprimanded Plaintiff in a way that deprived her of workplace safety and otherwise adversely affected her status as an employee because of her race.

60. Other employees who were similarly situated, but were non-Black or Caucasian individuals, which is different from the Plaintiff, have been treated more favorably than the Plaintiff with regards to the terms and conditions of employment and workplace conditions.

61. Plaintiff's race was a determining factor in Defendant's unlawful conduct toward Plaintiff.

62. Plaintiff's race was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

63. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

64. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless, and in callous disregard of the rights of Plaintiff because of her race.

65. Defendant discriminated against Plaintiff because of her race by engaging in, tolerating, or failing to prevent race discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

66. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants, and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

67. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury, and monetary damages – including, but not limited to, past and future loss of income, benefits, career opportunities, medical expenses, and costs – and is entitled to all available legal and equitable remedies.

68. Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and her injury is permanent in nature.

69. Further, Defendant's treatment and actions are ongoing.

70. Plaintiff has incurred lost wages, loss of reputation, defamation of character, and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff not contributing in any way thereto.

71. Similarly, situated non-Black or Caucasian employees were not subjected to the same, similar, or any adverse treatment as Plaintiff.

72. Baltimore City Police Department must comply with Title VII, but by and through their conduct, have violated Title VII.

## COUNT II

**VIOLATION OF TITLE VII – HOSTILE WORK ENVIRONMENT**

73. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

74. When hostile work environment is alleged to have occurred as a result of unlawful discrimination, the Complainant must show that: (1) she belongs to a statutorily protected class; (2) she was subjected to harassment in the form of unwelcome verbal or physical conduct; (3) the harassment complained of was based on her statutorily protected class; (4) the harassment affected a term or condition of employment[1] and/or had the purpose or effect of unreasonably interfering with the work environment and/or creating an intimidating, hostile, or offensive work environment; and (5) there is a basis for imputing liability. *See Henson v. City of Dundee*, 682 F.2d 897 (11th Cir. 1982); *Humphrey v. United States Postal Service*, EEOC Appeal No, 01965238 (October 16, 1998); *Harris v. Forklift Systems, Inc.*, 510 U.S. at 21 (1993).

75. The actions and conduct of the above-described perpetrators as set forth herein created a hostile, offensive and intimidating work environment based upon Plaintiff's race and detrimentally affected Plaintiff.

76. The actions and conduct by the above-described perpetrators as set forth herein were severe and pervasive and constituted discrimination based on race.

77. The actions and conduct described herein would have detrimentally affected a reasonable person of the same race in Plaintiff's position.

---

[1] The phrase "terms, conditions and privileges of employment" in Title VII is an expansive concept which sweeps within its protective ambit the practice of creating a working environment heavily charged with racial discrimination (or retaliation). One can readily envision working environment so heavily polluted with discrimination as to destroy completely the emotional and psychological stability of group of workers. *Rogers v. EEOC*, 454 F.2d 234 (1971).

78. Defendant knew or should have known of the harassment, discrimination, and disparate treatment described herein. Defendant has failed to address the problems and further failed to implement effective and appropriate measures to stop these acts.

79. By failing to conduct a prompt and thorough investigation of Plaintiff's allegations of discrimination; failing to redress the discrimination of Plaintiff; by consciously failing to protect Plaintiff from discrimination within the Department; and by punishing Plaintiff for her complaints of discrimination and disparate treatment, Defendant exacerbated the hostile work environment suffered by Plaintiff and intentionally discriminated against Plaintiff in violation of Title VII.

80. Defendant's actions, and failure to act, amounted to discrimination under Title VII and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The Equal Protection Clause of the Fourteenth Amendment abrogates the states' Eleventh Amendment sovereign immunity. Title VII, through the 1972 amendment known as the Equal Employment Opportunity Act ("EEOA"), provides an enforcement remedy for equal protection violations of state employees through Section 5 of the Fourteenth Amendment.

81. As a direct result of Defendant's unlawful acts, Plaintiff has suffered damages, including but not limited to lost wages and emotional and mental distress.

**COUNT III**

**VIOLATION OF TITLE VII – RETALIATION**

82.  Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

83.  Title VII of the Civil Rights Act prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of

employment, because of such individual's race, color, religion, sex, or national origin," 42 U.S.C. § 2000e–2(a)(1), and from retaliating against employees for engaging in activity protected by Title VII, *id.* § 2000e–3(a). To that end, an employer may not create or condone a hostile or abusive work environment that is discriminatory. *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 64–65 (1986).

84. Here, the Plaintiff faced retaliation for the complaint she submitted internally with the Department, and then externally with the EEOC.

85. Soon after complaining, Plaintiff was subjected to the ongoing unlawful conduct and adverse actions alleged throughout this Complaint in violation of Title VII.

86. Defendant subjected Plaintiff to the aforementioned adverse employment actions because of her opposition to the unlawful and discriminatory employment practices of Defendant in violation of Title VII.

87. Defendant, including Plaintiff's supervisors, knew of Plaintiff's engagement in protected activity prior to engaging in the aforementioned adverse actions when they were informed by Plaintiff directly, advised by an EEO representative, or otherwise should have known that Plaintiff engaged in the complaint process based on her informal and formal complaint filings. The adverse retaliatory actions to which Plaintiff has been subjected to are a direct result of Plaintiff having previously engaged in statutorily-protected activity.

88. Plaintiff's prior protected activity was a determining factor in Defendant's unlawful conduct toward Plaintiff.

89. Plaintiff's prior protected activity was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

90.  Similarly situated employees (no known prior EEOC activity) were not subjected to the same, similar, or any adverse treatment.

91.  Defendant's unlawful conduct has created a climate of fear and isolation for Plaintiff and other employees, which creates a chilling effect in violation of Title VII.

92.  The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

93.  Defendant's unlawful conduct negatively impacted the terms, conditions and privileges of Plaintiff's employment.

94.  Defendant's retaliatory conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of her participation in protected activity and opposition to Defendant's discriminatory conduct.

95.  Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

96.  Defendants' actions were intentional, reckless, and malicious.

97.  As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

98.  Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and her injury is permanent in nature. Further, Defendant's treatment and actions are ongoing.

99.  Plaintiff has incurred lost wages, loss of reputation, defamation of character, and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff contributing in any way thereto.

100. Baltimore City Police Department must comply with Title VII, and by and through their conduct, violated the law.

**COUNT IV**

**SECTION 1983 CLAIM FOR VIOLATION OF PLAINTIFF'S CIVIL RIGHTS UNDER SECTIONS 1981 AND 1983 OF THE CIVIL RIGHTS ACT**

101. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

102. Plaintiff brings a claim of violation of her freedom of speech and freedom of expression under the First Amendment to the U.S. Constitution by Defendant and its named Responsible Management Officials, for its acts of retaliation in violation of 42 U.S.C. §1981 through 42 U.S.C. §1983.

103. Section 1983 provides an individual the right to sue state government employees and others acting "under color of state law" for civil rights violations.

104. The Defendant, and its responsible management officials, under 42 U.S.C. § 1983 are persons who acted "under the color of state law."

105. Defendant, BPD, unlawfully deprived Plaintiff of her civil rights in violation of Sections 1981 and 1983 of the Civil Rights Act and the First Amendment when it retaliated against Plaintiff for having engaged in protected activity by complaining of discrimination on the basis of her race, thereby punishing Plaintiff for exercising her rights and discouraging her as well as others from continuing to exercise such rights in the future.

106. Defendant treated Plaintiff disparately or pretextually in the terms and conditions of her employment compared with the way non-black employees, or employees that had not engaged in protected activity, were treated.

107. Plaintiff alleges that because she engaged in protected activities, she was illegally subjected to a pattern of further retaliation, harassment, and disparate treatment.

108. The acts described above are part of an institutional practice or custom, constituting an official policy of the Baltimore Police Department to cover up officer misconduct, discrimination, and retaliation against fellow officers who stand up against the Department for violations of their civil rights that should protect them from discrimination and retaliation in the workplace.

109. At all times relevant hereto, Defendant acted pursuant to a custom or policy of the Baltimore Police Department.

110. Defendant failed to adopt clear policies and failed to properly train its management officials in handling, managing, and protecting employees who engage in statutorily-protected activities within the Police Department.

111. As an African American, Plaintiff is a member of a protected class.

112. Because of her race (African American), Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint under Section 1983.

113. Defendant's foregoing unlawful adverse actions materially affected the terms, privileges, and conditions of Plaintiffs employment.

114. Defendant knew that Plaintiff had complained of discriminatory and disparate treatment prior to the adverse actions described throughout the Complaint and was aware or should

have been aware of the discrimination Plaintiff was subjected to because of her race and the retaliation that she was subsequently subjected to.

115.  Plaintiff has been treated differently and subjected to different terms and conditions of her employment due to her race (African American) and for her participation in statutorily-protected EEO activity.

116.  Defendant has limited, segregated, and classified Plaintiff in a way that deprived her of employment opportunities and otherwise adversely affected her status as an employee, because of her race (African American) and in retaliation for her statutorily-protected activities.

117.  Other employees who were similarly situated, but members of a different class than Plaintiff, have been treated more favorably than the Plaintiff in the terms and conditions of employment.

118.  Plaintiff consistently attempted to report the pervasive culture and custom within BPD of treating African American Officers differently than White Officers when it came to promotions, disciplinary actions, and conduct.

119.  Plaintiff's allegations clearly show a custom of discrimination as required by Section 1983.

120.  Plaintiff's engagement in protected EEO activity was a determining factor in Defendant's unlawful conduct toward Plaintiff.

121.  The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

122.  Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of her race (African American) and was in retaliation for her protected conduct.

## COUNT V

## VIOLATION OF THE MARYLAND FAIR EMPLOYMENT PRACTICES ACT (MFEPA)

123.  Plaintiff realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

124.  The Maryland Fair Employment Practices Act (MFEPA), Md. Code Ann., State Gov't, § 20-601 et seq. outlaws discrimination in employment based on race, color, religion, sex, age, national origin, marital status, sexual orientation, gender identity, genetic information, or disability by employers with more than 15 employees.

125.  Under the MFEPA, an employer can be held legally responsible if the person responsible for the harassment can make or recommend employment decisions (e.g., hiring and firing, promotion and demotion, and reassignments) or directs, supervises, or evaluates the work activities of the employee, even if that person does not have the power to make employment decisions.  Additionally, an employer can be liable if its own negligence leads to harassment or enables harassment to continue.

126.  Harassment is unwelcome or offensive conduct that is based on "race, color, religion, ancestry or national origin, sex, age, marital status, sexual orientation, gender identity, or disability."

127.  Pursuant to Md. Code, State Gov't Art. § 20-903, MFEPA does not allow the state, its officers, and its units to raise sovereign immunity as a defense in an employment

discrimination case. There is nothing in the Maryland Code related to claims of employment discrimination filed by a police officer, who is a public employee, against her former employer, the Baltimore Police Department, which is a public employer. This is not a case a civilian is bringing against a law enforcement entity—this is a case about an aggrieved employee bringing an employment discrimination and retaliation complaint against her employer for its actions against her in the scope of her employment. Just like a police officer can bring a federal discrimination claim against her employer claim under Title VII of the Civil Rights Act, a parallel state claim can be brought on the same basis. Because Plaintiff's MFEPA claims are part of the same case or controversy as her Title VII claims, the Court should exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

128. Here, the Plaintiff was subjected to harassment or offensive conduct that is based on race, when the investigators continued to make false allegations against her that ultimately resulted in charges despite Plaintiff's consistent efforts to assist investigators in every capacity and when the charges that were brought against Plaintiff were disproportionate in comparison to her actual involvement in the incident, as well as the charges that her colleagues and superiors of different races had brought against them for more egregious offenses. The above-mentioned actions by Defendant towards the Plaintiff demonstrate the discriminatory and prejudicial manner in which Defendant treated the Plaintiff and her lawful claims against them.

129. The Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of her race (African American).

130.  Pursuant to the Local Government Tort Claims Act ("LGTCA"), Md. Code (2020 Repl. Vol., 2021 Supp.), § 5-301 et seq. of the Courts and Judicial Proceedings Article ("C.J."), Plaintiff has provided sufficient notice to Defendant through her filing of internal and federal EEO charges regarding the claims stated in this Complaint.[2]

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Wanda Johnson, respectfully prays that this Court grant her the following relief:

a.  Enter a declaratory judgement finding that the foregoing actions of Defendant violated Title VII, Section 1983, and the MFEPA;

b.  Enter a permanent injunction directing Defendant to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future;

c.  Award back pay and compensatory damages in the amount of $5,000,000 (five million dollars and zero cents) that would fully compensate Plaintiff for the economic loss, loss of promotional potential, reputation, lost wages, lost job benefits; physical and psychological injury, humiliation, embarrassment; and mental and emotional distress caused by the conduct of the Defendant alleged herein;

d.  Award Plaintiff reasonable attorneys' fees and costs incurred in this action; and

e.  Order such other relief as this Court deems just and equitable.

---

[2] "[S]trict compliance with the notice provisions of the LGTCA is not always required; substantial compliance may suffice." *Renn v. Bd. of Comm'rs of Charles Cty*, 352 F. Supp. 2d 599, 603 (D. Md. 2005). Substantial compliance is satisfied "[w]here the purpose of the notice requirements is fulfilled, but not necessarily in a manner technically compliant with all of the terms of the statute." *Id.* In the context of employment discrimination, some courts have held that notice of an EEOC charge constitutes substantial compliance, at least if notice is provided to defendant by the LGTCA deadline and the charge provides "the identity of the claimant, the time and place of the event, the nature of the claim, and the Plaintiff's intent to pursue litigation." *Nelson v. City of Crisfield*, L-10-1816, 2010 WL 4455923, at *2 (D. Md. Nov. 5, 2010).

## **JURY DEMAND**

Plaintiff demands a trial by jury of all issues so triable herein.


Dated: August 14, 2023


Respectfully submitted,


By: /s/ Dionna Maria Lewis
Dionna Maria Lewis, Esq.
Bar No. 19486
District Legal Group, PLLC
700 Pennsylvania Ave SE, Suite 2098
Washington, D.C.20003
Tel. (202) 486-3478
Dionna@DistrictLegalGroup.com
*Counsel for Plaintiff Wanda Johnson*