**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| WANDA JOHNSON, | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Action No. RDB-23-2215 |
| BALT. POLICE DEPARTMENT, | * | |
| *Defendant*. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

In this civil rights action, Plaintiff Wanda Johnson ("Plaintiff" or "W. Johnson") raises three claims under Title VII of the Civil Rights Act of 1964—one claim for race discrimination (Count I), one claim for hostile work environment (Count II), and one claim for retaliation (Count III); a *Monell*[1] claim for violation of her civil rights under 42 U.S.C. § 1981 (Count IV); and violations under the Maryland Fair Employment Practices Act ("MFEPA") (Count V), against her former employer, Defendant Baltimore Police Department ("Defendant" or "BPD").[2] (ECF No. 1.)[3] Specifically, W. Johnson claims that, by continuing a disciplinary investigation against her that ultimately resulted in formal charges and her "forced" resignation, Defendant BPD discriminated against her based on her race, subjected her to a

---

[1] In what is commonly referred as to a *Monell* claim, 42 U.S.C. § 1983 permits a plaintiff to bring a claim directly against a municipality if it causes a deprivation of a constitutional right through an official policy or custom. *See. Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978).

[2] Plaintiff asserts her claims against Defendant "Baltimore City, Maryland: Baltimore Police Department." (ECF No. 1.) For clarity, this Court construes Plaintiff's Complaint to be brought against Baltimore Police Department.

[3] For clarity, this Memorandum Order cites to the ECF generated page number, rather than the page number at the bottom of the parties' various submissions, unless otherwise indicated. Likewise, this Memorandum Order cites to the ECF generated document number, rather than the exhibit number provided by the parties' various submissions.

hostile work environment, and retaliated against her for submitting internal complaints.  (*Id.* ¶¶ 51–72, 73–81, 82–100, 123–130.)  Plaintiff also claims that her rights were violated as a result of BPD's custom and practice of disproportionately punishing Black officers.  (*Id.* ¶¶ 101–122.)

Presently pending before this Court is the Defendant's Motion to Dismiss (ECF No. 9).  Plaintiff responded (ECF No. 10), and Defendant replied (ECF No. 11).  The parties' submissions have been reviewed and no hearing is necessary.  Local Rule 105.6 (D. Md. 2023).  For the reasons that follow, the Defendant's Motion to Dismiss (ECF No. 9) shall be GRANTED and Plaintiff's Complaint (ECF No. 1) is DISMISSED WITHOUT PREJUDICE.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff."  *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)).  Except where otherwise indicated, the following facts are derived from Plaintiff's Complaint (ECF No. 1), and accepted as true for the purpose of Defendant's Motion to Dismiss (ECF No. 9).

The instant case arises out of events that transpired after a bar fight at Norma Jean's nightclub on August 26, 2018.  At the time of the bar fight, Plaintiff Wanda Johnson, who is Black, was employed as a Police Officer with the Baltimore Police Department and engaged to her now-husband, Marcus Johnson ("M. Johnson"), a fellow BPD Police Officer.  (ECF No. 1 ¶¶ 15, 20.)  In brief, W. Johnson and other off-duty police officers had gathered at

Norma Jean's for Plaintiff's bachelorette party when an altercation ensued between members of Plaintiff's party and other nightclub patrons.  (*Id.* ¶¶ 21–24.)  After a member of Plaintiff's bachelorette party notified M. Johnson about the altercation, M. Johnson, who was on patrol, "contacted his supervisor to request permission to enter the venue and escort Plaintiff to safety."  (*Id.* ¶ 25.)  Sometime after M. Johnson arrived on the scene, a physical altercation ensued between Henrietta Middleton ("Middleton"), an off-duty BPD Police Officer attending Plaintiff's bachelorette, and BPD Sgt. Marlon Koushall ("Koushall") on the sidewalk outside Norma Jean's.  (*Id.* ¶¶ 26–27.)  The altercation was witnessed by another off-duty BPD Police Officer attending Plaintiff's bachelorette, Det. Dominique Wiggins ("Wiggins"), who attempted to intervene and render aid to Middleton after she witnessed Koushall approach and strike Middleton in her face.  (*Id.* ¶¶ 27–28.)  Middleton was removed from the scene in handcuffs, (*id.* ¶ 29), though as discussed below, Koushall was ultimately charged for assault on Middleton several months later.  (*Id.* ¶ 34.)

Shortly after the incident, Sgt. Raymond Lloyd ("Lloyd") of BPD's Internal Affairs Division[4] ("Internal Affairs" or "IAD") interviewed all BPD personnel who were at Norma Jean's, including Plaintiff.  (*Id.* ¶¶ 30–31.)  W. Johnson alleges that "due to the conduct of [] Koushall and BPD's attempts to protect him, . . . the Internal Affairs [d]etectives chose to fabricate allegations against Plaintiff and her husband regarding their roles and alleged motives to fabricate statements in the incident."  (*Id.* ¶ 32.)  Plaintiff further alleges that she was

---

[4]  The Internal Affairs division was rebranded as the Public Integrity Bureau in 2019.  *Crime Reduction & Departmental Transformation Plan*, BALT. POLICE DEP'T 5 (June 2019), https://www.baltimorepolice.org/sites/default/files/General%20Website%20PDFs/BPD_Crime_Reduction_and_Departmental_Transformation_Plan.pdf.

"blocked from transferring to another unit due to the incident." (*Id.* ¶ 33.)

Sometime in February 2019, Koushall was formally charged for the August 26, 2018 incident. (*Id.* ¶ 34.) Sometime in September 2019, Plaintiff testified for the State during Koushall's bench trial. (*Id.* ¶ 36.) Ultimately, Koushall was found guilty of second-degree assault and misconduct in office, and his conviction was affirmed by the Appellate Court of Maryland[5] and the Maryland Supreme Court.[6] (*Id.*); *see Koushall v. State*, No. 2031, 2021 Md. App. LEXIS 36, 2021 WL 225810 (Md. App. Jan. 22, 2021); *Koushall v. State*, 277 A.3d 1090 (Md. 2022).

Meanwhile, in June 2019, W. Johnson was notified that she was being investigated in relation to the incident. (ECF No. 1 ¶ 35.) Sometime thereafter in June 2019, the Office of the State's Attorney for Baltimore City ("SAO") sent a letter to the BPD announcing that their office was declining to pursue charges against Plaintiff. (*Id.* ¶ 39); *see Harrison v. Johnson*, Nos. 1209, 1229, 1230, 2021 WL 4841134, 2021 Md. App. LEXIS 929, at *2 (Md. App. Oct. 18, 2021).

However, on June 4, 2020, BPD IAD interviewed W. Johnson as part of the disciplinary investigation against her. (*Id.* ¶ 35); *Harrison*, 2021 Md. App. LEXIS 929, at *2. On June 11, 2020, disciplinary charges were filed against W. Johnson, Wiggins, and M. Johnson. *Harrison*, 2021 Md. App. LEXIS 929, at *2, 6–8. According to the charges against

---

[5]  At the time of *Koushall*, the Appellate Court of Maryland was named the "Maryland Court of Special Appeals." At the November 8, 2022 general election, voters in Maryland ratified a constitutional amendment changing the name of the "Maryland Court of Special Appeals" to the "Appellate Court of Maryland." The name change took effect on December 14, 2022.

[6]  At the time of *Koushall*, the Maryland Supreme Court was named the "Court of Appeals of Maryland."  At the November 8, 2022 general election, voters in Maryland ratified a constitutional amendment changing the name of the "Court of Appeals of Maryland" to the "Maryland Supreme Court." The name change took effect on December 14, 2022.

her, Plaintiff was involved in physical altercations with other patrons and she was accused of making false statements in her interviews on August 26, 2018 and June 4, 2020.  *Id.*; (*see also* ECF No. 1 ¶ 35.)  Plaintiff alleges that she was promptly suspended without pay, (ECF No. 1 ¶ 39), though the Suspension of Police Powers form dated June 11, 2020 provides that Plaintiff was suspended with pay.  (*See* ECF No. 9-5)

On August 26, 2020, W. Johnson filed a complaint and petition for a show cause order in the Circuit Court for Baltimore City, requesting the court require BPD to show cause why the disciplinary charges against her were not time-barred and requesting that the court enjoin BPD from pursuing the charges filed against her.  *Harrison*, 2021 Md. App. LEXIS 929, at *2, 8–9.  While the circuit court granted W. Johnson's petition, on October 18, 2021, the Appellate Court of Maryland[7] reversed the circuit court's decision, holding that BPD could proceed with the disciplinary charges against Johnson.  *Id.* at *5–6, 22–27.  While Plaintiff's Complaint indicates that Maryland's intermediate appellate court found the charges against Plaintiff were time-barred, (ECF No. 1 ¶ 41), that is not so.  *Harrison*, 2021 Md. App. LEXIS 929, at *5–6, 22–27.  The court held that the false statement charges brought against W. Johnson seven days after the false statements were allegedly made on June 4, 2020 were not time-barred and that the charges against Plaintiff concerning violations committed on August 28, 2018 were also not time-barred because the applicable limitations period did not begin running until June 14, 2019 when the SAO sent its first declination letter.  *Id.*

As a result of the Appellate Court of Maryland's finding that the charges against

---

[7] Similar to footnote 5, at the time of *Harrison*, the Appellate Court of Maryland was named the "Maryland Court of Special Appeals."

Johnson were not time-barred, the disciplinary matter against Plaintiff proceeded to an administrative trial board on May 24–25, 2022, pursuant to Section 3-107 of the Public Safety Article of the Maryland Code.  (ECF No. 1 ¶ 43.)  Plaintiff alleges that BPD "attempted to terminate Plaintiff on the basis of alleged violations of BPD policy for assault, false statements, interference with internal investigations, and misconduct in failing to report the altercation to her supervisors, despite the fact that [she] was off-duty when the incident occurred[] and consistently denied the allegations."  (*Id.*)  On June 1, 2022, Plaintiff "was forced . . . to submit her resignation in lieu of termination[.]"  (*Id.* ¶ 44.)

In her Complaint, Plaintiff states she "was shocked that she was immediately moved towards termination and ultimately forced to resign," citing four examples where white BPD personnel suspected of misconduct or other severe offenses were not subjected to the same punishment.  (*Id.* ¶ 46.)  First, Plaintiff cites an instance where a white male officer called an applicant a racial slur but was given the opportunity to retire without reprimand.  (*Id.*)  Second, Plaintiff cites an example where a white male officer accrued multiple DUI charges and a fleeing and eluding police charge, whom Plaintiff alleges was "suspended then reinstated with minimal punishment" but ultimately retired.  (*Id.*)  Third, Plaintiff cites an incident where a white male officer was charged with "use of force" for striking an individual suffering from a behavioral crisis and received no suspension but instead received a "severe letter of reprimand" and loss of five days of leave, though he was ultimately suspended awaiting a declination letter for another incident.  (*Id.*)  Lastly, Plaintiff cites an instance where a white female officer was involved in a domestic assault with another law enforcement officer.  (*Id.*)  While both officers were suspended, the trial board hearing against the white female officer

was dismissed and charges dropped "due to what was referred to as an improper investigation by the investigating detective." (*Id.*) Plaintiff further alleges that in October 2022, a former supervisor informed her that "instructors at the Police Academy for a training program for lieutenants were being taught they should tow the line in voting 'guilty' during trial boards[.]" (*Id.* ¶ 47.)

On February 16, 2021, Plaintiff filed a charge with the United States Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 8; *see also* ECF No. 9-3.) Therein, W. Johnson alleges that BPD discriminated against her based on her race and in retaliation. (ECF No. 9-3.) She provides that:

> On or about June 11, 2020, I was put on suspension with pay following an August 2018 incident in which I got into a physical altercation with another woman. The charges were later dropped on or about November 9, 2020. On December 2, 2020, I was subjected to unequal terms and conditions of employment when I was informed that [BPD] was seeking to keep me on suspension while seeking termination for allegedly making false statements during the investigation [Several other white BPD officers] all have allegedly made false statements during investigations. They were all suspended, but [BPD] did not seek termination for them. . . . I was not given a reason for the difference in treatment. . . . I believe I was discriminated against with respect to suspension and unequal terms and conditions of employment based on my race (Black) and in retaliation for engaging in a protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended.

(*Id.*) The EEOC declined to proceed with her claim and therefore issued her a right-to-sue letter "which Plaintiff received on May 15, 2023," though she does not indicate when the right-to-sue letter was issued. (ECF No. 1 ¶ 10.)

And so, on August 14, 2023, ninety-one days after she received the right-to-sue letter, Plaintiff initiated the instant lawsuit, filing a five-count complaint in this Court. (ECF No. 1.) On November 6, 2023, Defendant moved to dismiss Plaintiff's complaint pursuant to Federal

Rule of Civil Procedure 12(b)(6).  (ECF No. 9.)  The matter has been fully briefed (ECF Nos. 10, 11) and is ripe for review.

## STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P 8(a)(2).  The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotations omitted).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).  A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely."  *Twombly*, 550 U.S. at 556 (internal quotations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim.  *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

When ruling on a motion to dismiss, a court may only "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citing *Sec'y of State for Def. v. Trimble Nav. Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)).  A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citing *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 86 (E.D. Va. 2007)).  In support of its Motion to Dismiss (ECF No. 9), Defendant submitted (1) Plaintiff's February 16, 2021 EEOC charge (ECF No. 9-3); (2) the Memorandum of Understanding between the Baltimore City Police Department and the Baltimore City Lodge No. 3, Fraternal Order of Police, Inc. Unit II: Police Sergeants and Police Lieutenants for Fiscal Years 2019–2021 (ECF No. 9-4); (3) the Suspension of Police Powers form dated June 11, 2020 suspending Plaintiff with pay pending termination (ECF No. 9-5); and (4) Baltimore Police Policy 310, Disciplinary/Failure to Appear And Traffic Matrix published October 25, 2017 (ECF No. 9-6).  This Court will consider Plaintiff's EEOC charge (ECF No. 9-3) and Suspension of Police Powers Form (ECF No. 9-5), as these forms "give rise to the legal rights asserted." *Chesapeake Bay Found.*, 794 F. Supp. 2d at 611.

## ANALYSIS

Through her Complaint, Plaintiff Wanda Johnson asserts three claims under Title VII of the Civil Rights Act of 1964—race discrimination (Count I), hostile work environment (Count II), and retaliation (Count III); a *Monell* claim for violation of her civil rights under 42

U.S.C. § 1981 (Count IV); and violations under MFEPA (Count V), against her former employer, Defendant Baltimore Police Department.  (ECF No. 1.)  Through their Motion to Dismiss, BPD seeks dismissal of all counts.  (ECF No. 9.)

## I.      Plaintiff's Title VII Claims (Counts I, II, and III)

Title VII of the Civil Rights Act of 1964 proscribes discrimination in employment on the basis of race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2(a)(1).  The Act also prohibits retaliation against persons who assert rights under the statute.  *Id.* § 2000e-3(a).

### A.  Exhaustion of Administrative Remedies

As a preliminary matter, this Court begins with the issue of exhaustion.  As a precondition to the commencement of a Title VII action in court, a complainant must first file a charge with the EEOC.  *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1846 (2019) (citing 42 U.S.C. § 2000e-5(e)(1), (f)(1).  For an EEOC charge to be timely, it must be filed within either 180 days or 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1).  The 300-day deadline applies where a complainant first files her charge with a state or local agency, as is required where a state has such a procedure.  *Id.* § 2000e-5(c), (e)(1).  But "[i]f the state or local agency has a 'worksharing' agreement with the EEOC, a complainant ordinarily need not file separately with federal and state agencies.  She may file her charge with one agency, and that agency will then relay the charge to the other."  *Fort Bend Cnty.*, 139 S. Ct. at 1846.  Maryland has such an agreement, thus Plaintiff had 300 days after the alleged unlawful employment practice occurred to file her charge with the EEOC.  *See E.E.O.C. v. R&R Ventures*, 244 F.3d 334, 338 n* (4th Cir. 2001); *E.E.O.C. v. Techalloy Md., Inc.*, 894 F.2d 676, 678 (4th Cir. 1990).  Any discriminatory action that occurred outside that

limitations period "cannot be used as a basis for recovery." *Gilliam v. S.C. Dep't of Juv. Just.*, 474 F.3d 134, 139 (4th Cir. 2007).

Upon receiving a charge, the EEOC must notify the employer and investigate the allegations.   42 U.S.C. § 2000e-5(b).   If the EEOC finds "reasonable cause" to believe the charge is true, the EEOC must "endeavor to eliminate [the] alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." *Id.*   If the EEOC cannot achieve a voluntary settlement, it may "bring a civil action" against the employer in court.   *Id.* § 2000e-5(f)(1).   On the other hand, where the EEOC concludes that there is "n[o] reasonable cause to believe that the charge is true," Title VII directs the EEOC to dismiss the charge and notify the complainant of his right to sue in court.   *Id.* § 2000e-5(b), f(1).   This notice is commonly called a "right-to-sue letter."   *See, e.g., Laber v. Harvey*, 438 F.3d 404, 416 (4th Cir. 2006).   Of relevance here, a complainant has 90 days to file suit in federal or state court after being notified of the right to sue.   *Id.* § 2000e-5(f)(1).

In *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843 (2019), the Supreme Court emphasized that a plaintiff's failure to exhaust administrative remedies does not divest the court of jurisdiction. *Id.* at 1846.   Rather, exhaustion is a "claim-processing rule," and it is "'mandatory' in the sense that a court must enforce the rule if a party 'properly raises it.'"   *Id.* (cleaned up) (quoting *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curiam)).   Although a defendant may waive arguments related to administrative exhaustion, if asserted in a timely fashion such objections may warrant dismissal under Rule 12(b)(6).   *See Kenion v. Skanska USA Bldg., Inc.*, No. RBD-18-3344, 2019 U.S. Dist. LEXIS 156793, 2019 WL 4393296, at *4 (D. Md. Sept. 13, 2019).

Title VII's administrative exhaustion process has substantive effect. Generally, it limits the scope of a plaintiff's federal lawsuit to those parties and claims named in the administrative charge. *See* 42 U.S.C. § 2000e-5(f)(1); *Sydnor v. Fairfax Cnty., Va.*, 681 F.3d 591, 593 (4th Cir. 2012); *Causey v. Balog*, 162 F.3d 795, 800 (4th Cir. 1998. However, because "EEOC charges often are not completed by lawyers," the Fourth Circuit has instructed courts to "construe them liberally." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005); *see Sydnor*, 681 F.3d at 594 ("[T]he exhaustion requirement should not become a tripwire for hapless plaintiffs."). Federal courts may hear claims not presented to the EEOC so long as they are "'reasonably related'" to the plaintiff's EEOC charge "'and can be expected to follow from a reasonable administrative investigation[.]'" *Sydnor*, 681 F.3d at 594 (quoting *Smith v. First Union Nat. Bank*, 202 F.3d 234, 247 (4th Cir. 2000)).

Defendant raises two arguments with respect to Title VII's administrative exhaustion process. First, BPD contends that Plaintiff has failed to exhaust her administrative remedies because her claims exceed the scope of her EEOC charge. (ECF No. 9-2 at 5–7.) Second, Defendant contends that Plaintiff's Complaint is time-barred because "[she] filed her charge after at least 719 days had passed after she learned of the allegedly retaliatory and discriminatory investigation," i.e., sometime in June 2019. (*Id.* at 13–14.)

Regarding BPD's first argument, as Judge Maddox of this Court explained in Plaintiff's husband's case against BPD, "EEOC charges are to be construed liberally." *See Johnson v. Balt. Police Dep't*, No. MJM-22-1356, 2023 WL 6381487, 2023 U.S. Dist. LEXIS 174959, at *14 (D. Md. Sep. 29, 2023) (citing *Chacko*, 429 F.3d at 509; *Sydnor*, 681 F.3d at 594). As noted above, federal courts may hear claims not presented to the EEOC so long as they are "reasonably

related" to the plaintiff's EEOC charge "and can be expected to follow from a reasonable administrative investigation." *Sydnor*, 681 F.3d at 594 (citation omitted).

In Plaintiff's EEOC charge, she alleged discrimination based on her race and retaliation. (ECF No. 9-3.)  The narrative portion of the EEOC charge provides, in pertinent part, that Plaintiff "was subjected to unequal terms and conditions of employment when [she] was informed [on December 2, 2020] that [BPD] was seeking to keep [her] on suspension while seeking termination for allegedly making false statements during the investigation." (*Id.*) She cites to instances where white BPD personnel were suspended following accusations of making false statements, though she indicates that "[BPD] did not seek termination for them." (*Id.*)

In her Complaint, Plaintiff alleges that, by continuing a disciplinary investigating against her that ultimately resulted in formal charges and her "forced" resignation, Defendant discriminated against her based on her race, subjected her to a hostile work environment, and retaliated against her for submitting internal complaints. (*Id.* ¶¶ 51–72, 73–81, 82–100, 123–130.)  It does not appear that the EEOC charge (ECF No. 9-3) was filed by an attorney, thus the Court must construe the EEOC charge liberally. *Chacko*, 429 F.3d at 509.  Broadly speaking, the allegations in Plaintiff's Complaint with respect to the continued disciplinary investigation are related to the claim in the EEOC charge.  Arguably, the allegations in the suit would have been "expected to follow from a reasonable administrative investigation." *Sydnor*, 681 F.3d at 594 (citation omitted).  As such, under the circumstances, the allegations in Plaintiff's Title VII claims (Counts I, II, and III) are "reasonably related" to the EEOC charge. *Id.*

Turning to the issue of timeliness, Plaintiff filed her EEOC charge on February 16, 2021. (ECF No. 1 ¶ 8; *see also* ECF No. 9-3.) According to Defendant, Plaintiff's Complaint is time-barred because "[she] filed her charge after at least 719 days had passed after she learned of the allegedly retaliatory and discriminatory investigation," i.e., sometime in June 2019. (ECF No. 9-2 at 13–14.) However, Plaintiff's EEOC charge does not complain that BPD initiated its investigation against her; rather, Plaintiff's EEOC charge complains that she was "put on suspension with pay" "[o]n or about June 11, 2020," and while "[t]he charges were . . . dropped on or about November 9, 2020[,]" Plaintiff "was subjected to unequal terms and conditions of employment when [she] was informed [on December 2, 2020] that [BPD] was seeking to keep [her] on suspension while seeking termination for allegedly making false statements during the investigation." (ECF No. 9-3.)

While this Court finds that Plaintiff's EEOC charge was timely, it is prudent to note that Plaintiff's Title VII claims appear to be time-barred for an entirely different reason. As noted *supra*, to assert a cause of action under Title VII, "an aggrieved person [must] file a civil action within 90 days of receiving a right-to-sue letter from the EEOC." *Quinn v. Copart of Connecticut, Inc.*, 791 F. App'x 393, 395 (4th Cir. 2019) (citing 42 U.S.C. § 2000e-5(f)(1)). The Fourth Circuit has "explicitly recognized that the 90-day requirement is 'in the nature of a statute-of-limitations defense.'" *Id.* (quoting *Laber v. Harvey*, 438 F.3d 404, 429 n.25 (4th Cir. 2006)). The ninety-day period is not jurisdictional, but instead is treated as a statute of limitations period. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982); *see also Quinn*, 791 F. App'x at 395 ("[A] Title VII claimant who fails to file a complaint within the 90-day period generally forfeits his right to pursue his [or her] claims."); *Fisher v. Maryland Dep't of*

*Hous. & Cmty. Dev.*, 32 F. Supp. 2d 257, 264 (D. Md. 1998) ("Courts have interpreted this provision as a statute of limitations, and held that failure to file suit within ninety days after receipt of a notice from the EEOC renders a plaintiff's action untimely.").

The statute of limitations is an affirmative defense which, ordinarily, must be pled and proved by the defense.  It may, however, be reached on a motion to dismiss where the facts sufficient to rule are alleged in the complaint or are revealed by those documents noted above that may be considered without converting the motion to one for summary judgment.  *Epcon Homestead, LLC v. Town of Chapel Hill*, 62 F.4th 882, 885 (4th Cir. 2023).

In her Complaint, Plaintiff alleges that she received the EEOC's right-to-sue letter on May 15, 2023 (ECF No. 1 ¶ 10), though she did not file her Complaint until August 14, 2023, which is 91 days after she claims to have received the EEOC's right-to-sue letter.  Therefore, by her own admission, W. Johnson's claims under Title VII would be untimely.  Even if the claims were timely, Plaintiff's Title VII claims are deficient as pled.

### B.  Plaintiff's Race Discrimination Claim (Count I)

To allege disparate treatment without direct evidence of animus under Title VII, "a plaintiff must plead: '(1) [her] membership in a protected class; (2) [her] satisfactory job performance; (3) an adverse employment action; and (4) similarly situated employees outside the protected class who received more favorable treatment.'"  *Bliss v. Garland*, No. 122CV563PTGIDD, 2023 U.S. Dist. LEXIS 124862, 2023 WL 4627435, at *6 (E.D. Va. July 19, 2023) (citing *Tabb v. Bd. of Ed. of Durham Pub. Schs.*, 29 F.4th 148, 157 (4th Cir. 2022)).  To survive a motion to dismiss, a claim for discrimination need not establish a prima facie case.  *McCleary-Evans v. Md. DOT*, 780 F.3d 582, 584 (4th Cir. 2015) (citing *Coleman v. Md. Court of*

15

*Appeals*, 626 F.3d 187, 191 (4th Cir. 2010)); *Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 288 (4th Cir. 2012).  But, such a claim must allege facts "'that plausibly state a violation of Title VII 'above a speculative level.'"  *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 617 (4th Cir. 2020) (quoting *Coleman*, 626 F.3d at 190).  Review of the elements of a prima facie claim, set forth above, are helpful in assessing whether plaintiff has stated a plausible claim.

BPD contends that Plaintiff's discrimination claim should be dismissed on the ground that it is substantively deficient.  According to Defendant, Plaintiff has failed to allege any facts that, if proven, would establish that she suffered an adverse employment action and has not adequately asserted that the alleged events were the result of discriminatory animus.  (ECF No. 9-2 at 7–11.)

With respect to the adverse employment action requirement, "the existence of some adverse employment action is required" for a plaintiff to prevail on a Title VII discrimination claim.  *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007); *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004).  "An adverse employment action is a discriminatory act that adversely affects the terms, conditions, or benefits of the plaintiff's employment."  *Holland*, 487 F.3d at 219 (cleaned up).  It is an action that "'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'"  *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 321 (4th Cir. 2011) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

In short, an adverse action must have a "significant detrimental effect" on an employee. *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999).  Plaintiff's responsive filing to the

Defendant's Motion suggests that numerous "adverse employment actions" occurred.  (ECF No. 10-1 at 6.)  Through her Complaint, Plaintiff alleges that (1) she was she suspended without pay in June 2020, (ECF No. 1 ¶ 39); and (2) she "was forced by Defendants to submit her resignation in lieu of termination on June 1, 2022."  (ECF No. 1 ¶ 44.)

With respect to Plaintiff's allegation that she was suspended in June 2020, this Court first notes that the Suspension of Police Powers form dated June 11, 2020 contradicts Plaintiff's allegation that her suspension was with pay.  (*See* ECF No. 9-5.)  Curiously, Plaintiff's responsive filing to Defendant's Motion doubles down on the allegation that she was suspended in June 2020 without pay, rather than conceding the issue.  (ECF No. 10-1 at 3.)  Nevertheless, this Court assumes that this was a typographical error and not intended to be misleading.  As Judge Maddox of this Court explained in Plaintiff's husband's case against BPD, "[p]lacing an employee on paid leave is generally considered not to be an adverse employment action." *See Johnson*, 2023 U.S. Dist. LEXIS 174959, at *17–18 (citing *Nzabandora v. Rectors & Visitors*, 749 F. App'x 173, 175 (4th Cir. 2018); *Mason v. Montgomery Cnty. Police Dep't*, No. 8:13-cv-01077-AW, 2013 U.S. Dist. LEXIS 174674, 2013 WL 6585928 (D. Md. Dec. 13, 2013)).  While placing an employee on leave without pay could be an adverse action, *Snyder v. Azar*, Civil Action No. TDC-18-0511, 2020 WL 4605223, 2020 U.S. Dist. LEXIS 143233, at *21–22(D. Md. Aug. 10, 2020), this Court questions whether Plaintiff's allegation that she was suspended without pay is entitled to the assumption of truth.  *Cf. Iqbal*, 556 U.S. at 680 (indicating that the first step in reviewing complaints under Rule 12(b)(6) is to identify the allegations entitled to the assumption of truth).  At bottom, Plaintiff's June 2020 suspension with pay does not constitute an adverse employment action.

To the extent that Plaintiff argues that she was subject to an adverse employment action "when the investigators continued to make false allegations against her that ultimately resulted in charges despite Plaintiff's consistent efforts to assist investigators in every capacity," (ECF No. 1 ¶ 53), this Court notes that in the cases brought by Plaintiff's husband and Wiggins, Judge Maddox explained that "[w]ithout any injury to Plaintiff's employment status, the internal investigations were not adverse employment actions." *See Johnson*, 2023 U.S. Dist. LEXIS 174959, at *18–19; *Wiggins v. Balt. Police Dep't*, No. MJM-22-1089, 2023 WL 6381515, 2023 U.S. Dist. LEXIS 174936, at *16–17 (D. Md. Sep. 29, 2023).

Unlike *Johnson* and *Wiggins*, who both represented that they were still employed by BPD, however, Plaintiff's Complaint alleges that she was forced to resign. *Nzabandora*, 749 F. App'x at 175; *Thorn v. Sebelius*, 766 F. Supp. 2d 585, 598 (D. Md. 2011); *Hoyle*, 650 F.3d at 337. Considering Plaintiff's claim that she was forced to resign in lieu of termination, the Fourth Circuit has explained that it is "well-established" that an involuntary resignation amounting to a constructive discharge satisfies the adverse action prong in Title VII cases. *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1354 (4th Cir. 1995); *see also Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 173 (4th Cir. 1988) (holding that coerced resignation amounts to a constructive discharge). As such, this Court finds that Plaintiff's allegation that she was forced to resign satisfies the adverse action requirement of Plaintiff's disparate treatment claim under Title VII.

Nevertheless, Plaintiff has failed to adequately allege disparate treatment from similarly situated conspirators. A plaintiff is "not required as a matter of law to point to a similarly situated comparator to succeed on a discrimination claim." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010), *see Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 545–46 (4th Cir.

2003).  But where, as here, "a plaintiff attempts to rely on comparator evidence to establish circumstances giving rise to an inference of unlawful discrimination," the plaintiff must demonstrate at trial that the comparator is similarly situated in all relevant respects. *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 748 (4th Cir. 2017).

Therefore, a plaintiff must allege facts showing that she is "similar in all relevant respects to [her] comparator." *Haywood*, 387 F. App'x at 359.  This includes "that the employees 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Id.* (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)); *see Sawyers v. United Parcel Serv.*, 946 F. Supp. 2d 432, 442 n.10 (D. Md. 2013).  While the comparison "'will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same set of circumstances,'" *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223–24 (4th Cir. 2019) (citation omitted), "[i]f a plaintiff wishes to prove that a defendant's legitimate, non-discriminatory explanation is pretext by pointing to other employees who were treated differently, '[t]he similarity between comparators . . . must be clearly established in order to be meaningful.'" *Swaso*, 698 F. App'x at 748 (citation omitted).  Thus, a complaint's conclusory assertions that the plaintiff and a coworker are on equal footing is insufficient to nudge a discrimination claim across the line from conceivable to plausible. *Id.*

Plaintiff's Complaint refers to four white comparators in an effort to support an

inference that Defendant unlawfully discriminated against Plaintiff.[8]  (ECF No. 1 ¶ 46.)  She alleges that an internal investigation was undertaken against her for allegedly making a false statement, (*id.* ¶ 35), and following the administrative trial board's finding that violated BPD's policy for "assault, false statements, interference with internal investigations, and misconduct in failing to report the altercation to her supervisors," (*id.* ¶ 43), "she was immediately moved towards termination and ultimately forced to resign" while "White or non-Black Officers and supervisors suspected of misconduct or other severe offenses were not subjected to the same punishment."  (*Id.* ¶ 46.)

The misconduct charged against the four proposed comparators vary widely, including use of racial slurs, criminal charges for multiple DUIs and a fleeing and eluding police, use of excessive force, and domestic assault.  (*Id.*)  Simply stated, no comparator was accused of misconduct similar to the findings of misconduct sustained against Plaintiff—namely, making a false statement during an investigation.  Therefore, Plaintiff has failed to state a plausible claim of discrimination under Title VII.  Accordingly, Defendant's Motion (ECF No. 9) will be GRANTED as to Count I, which is DISMISSED.

### C.  Plaintiff's Hostile Work Environment Claim (Count II)

To allege a claim of hostile work environment, a plaintiff must sufficiently allege that the challenged conduct was (1) "unwelcome;" (2) based on a protected class; (3) "'sufficiently severe or pervasive' to alter the conditions of her employment;" and (4) "imputable to her

---

[8]  Plaintiff's response to Defendant's Motion suggests that she named a total of five comparators including Koushall.  (ECF No. 10-1 at 7.)  While Koushall was accused of conduct similar to the findings sustained against Plaintiff, the inquiry is similarly situated employees *outside the protected class* who received more favorable treatment.  Plaintiff's Complaint is limited to discrimination based on race and Koushall is also Black.

employer." *Pueschel v. Peters*, 577 F.3d 558, 564–65 (4th Cir. 2009).  BPD contends that Plaintiff's hostile work environment claim must be dismissed because "Johnson fails to plead any facts to support her hostile work environment claim."  (ECF No. 9-2 at 13–14.)

Indeed, the facts as alleged do not support a hostile work environment claim.  (*See* ECF No. 1 ¶¶ 20–50.)  Apart from the general and conclusory statements in paragraphs 73 through 81 that the "actions and conduct of the [Defendant] created a hostile, offensive and intimidating work environment based upon Plaintiff's race and detrimentally affected Plaintiff" and the "[Defendant's] actions and conduct . . . were severe and pervasive," Plaintiff has wholly failed to plead any specific facts to state a plausible claim for hostile work environment.  Accordingly, Plaintiff's hostile work environment claim under Title VII (Count II) falls short of the plausibility standard required under *Iqbal* and *Twombly* and is therefore DISMISSED.

### D. Plaintiff's Retaliation Claim (Count III)

Title VII prohibits an employer from discriminating against an employee "because[s]he has opposed any practice made an unlawful employment practice by [Title VII]."  42 U.S.C. § 2000e-3(a).  The elements of a retaliation claim are: "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *Mackey v. Shalala*, 360 F.3d 463, 469 (4th Cir. 2004)).  BPD contends that Plaintiff's retaliation claim should be dismissed because Plaintiff failed to plead facts to satisfy the second and third elements.  (ECF No. 9-2 at 11–12.)

In her Complaint, Plaintiff contends that she "faced retaliation for the complaint she

submitted internally with the [Defendant], and then externally with the EEOC." (ECF No. 1 ¶ 84.) Plaintiff's Complaint fails to provide any detail as to any internal complaint submitted to Defendant. She does not specify to whom she complained, when such a complaint was submitted, or of what she complained. In her response, Plaintiff appears to contend that, in addition to her February 16, 2021 EEOC charge, her September 2019 testimony against Koushall constituted a protected activity under Title VII. (ECF No. 10 at 8.) Plaintiff misunderstands what constitutes protected activity under Title VII. The United States Court of Appeals for the Fourth Circuit "has recognized, consistent with the express language of section 2000e-3(a), that an employer may not retaliate against an individual either for 'opposing discriminatory practices in the workplace' or for 'participating in an ongoing investigation or proceeding under Title VII.'" *McNair v. Computer Data Sys., Inc.*, No. 98-1110, 1999 U.S. App. LEXIS 1017, at *13–14 (4th Cir. Jan. 26, 1999) (quoting *Laughlin v. Metropolitan Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998)). In brief, nothing in the Complaint suggests that her testimony against Koushall implicated Plaintiff's participation in an EEO process or opposition to unlawful discrimination under Title VII. By contrast, Plaintiff's February 16, 2021 EEOC charge does constitute protected activity.

Considering the second element, in a retaliation claim, the standard for an adverse action is more lenient than for a substantive discrimination claim. *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006) ("[T]he antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment."). An action is adverse in the retaliation context if it might "have dissuaded a reasonable worker from making or supporting a charge of discrimination."

*Burlington Northern*, 548 U.S. at 68 (quotation marks and citations omitted); *see Hoyle*, 650 F.3d at 337.  Having found that Plaintiff satisfied the adverse action requirement with respect to her disparate treatment claim, this Court finds that Plaintiff's Complaint satisfies the lower threshold for adverse action in the retaliation context.

Nevertheless, Plaintiff's retaliation claim fails because she fails to plausibly allege a causal link between the protected activity and the adverse action.  Plaintiff must demonstrate a "but-for" connection between her activity—the February 16, 2021 EEOC charge—and the adverse employment action—her forced resignation in June 2022.  *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).  Plaintiff may achieve this through providing evidence of temporal proximity, or "the existence of other facts that alone, or in addition to temporal proximity, suggests that the adverse employment action occurred because of the protected activity." *Johnson v. United Parcel Serv., Inc.*, 839 F. App'x 781, 784 (4th Cir. 2021); *see also Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (noting that the alleged temporal proximity must be "very close" (quoting *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248 (10th Cir. 2001)). Time gaps much shorter than the one alleged by Plaintiff have previously been rejected by the Fourth Circuit.  *See Horne v. Reznick Fedder & Silverman*, 154 F. App'x 361, 364 (4th Cir. 2005) ("[T]his court has previously noted that a lapse of two months between the protected activity and the adverse action is 'sufficiently long so as to weaken significantly the inference of causation.'" (quoting *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003))).  Moreover, it is worth emphasizing that the investigation that led to Plaintiff's suspension with pay and alleged forced resignation began well before she alleges to have engaged in protected activity.  *See Yampierre v. Balt. Police Dep't*, Civil Action No. ELH-21-1209, 2022 WL 3577268, 2022 U.S.

Dist. LEXIS 149017, at *96–97 (D. Md. Aug. 18, 2022) (quoting *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006)).  Plaintiff does not attempt to bridge the temporal gap with additional facts.  Indeed, her Complaint does not suggest that she was targeted not for her EEOC charge, but for "[her] involvement in the case against Sgt. Koushall[.]"  (ECF No. 1. ¶ 45.)  As noted, there is nothing in the Complaint to suggest that Plaintiff's testimony against Koushall was protected activity under Title VII.  Accordingly, Plaintiff's retaliation claim under Title VII (Count II) falls short of the plausibility standard required under *Iqbal* and *Twombly* and is therefore DISMISSED.

## II.      Plaintiff's MFEPA Claim (Count V)

MFEPA is the state analogue of Title VII.  As such, Maryland courts "traditionally seek guidance from federal cases in interpreting [MFEPA]."  *Haas v. Lockheed Martin Corp.*, 914 A.3d 735, 742 (Md. 2007).  In Count V of her Complaint, W. Johnson alleges that she "was subjected to harassment or offensive conduct . . . based on [her] race[] when the investigators continued to make false allegations against her that ultimately resulted in charges despite Plaintiff's consistent efforts to assist investigators in every capacity and when the charges that were brought against Plaintiff were disproportionate in comparison to her actual involvement in the incident, as well as the charges that her colleagues and superiors of different races had brought against them for more egregious offenses."  (ECF No. 1 ¶ 128.)  As explained in Part II.B–D *supra*, Plaintiff fails to allege sufficient facts to support an inference that any conduct she endured at BPD was on account of her race.  As such, Plaintiff's MFEPA claim (Count V) is DISMISSED.

## III.      Plaintiff's *Monell* Claim (Count IV)

Pursuant to 42 U.S.C. § 1983, a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See, e.g.*, *Filarsky v. Delia*, 566 U.S. 377 (2012); *Owens v. Balt. City State's Attorney's Off.*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Balt. City Police Dep't v. Owens*, 575 U.S. 983 (2015). However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017).

Simply stated, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999). To state a claim under § 1983, a plaintiff must allege that a person acting under color of state law deprived him of a constitutional right or a right conferred by a law of the United States. *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Safar*, 859 F.3d at 245 ("The first step in any such claim is to pinpoint the specific right that has been infringed."). "The statutory color-of-law prerequisite is synonymous with the more familiar state-action requirement—and the analysis for each is identical." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

In *Monell v. Department of Social Services*, the Supreme Court concluded that Congress intended "municipalities and other local government units to be included among those persons to whom § 1983 applies." 436 U.S. 658, 690 (1978). The Court further explained that "[l]ocal governing bodies [] can be sued directly under § 1983 for monetary, declaratory, or injunctive

relief, where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* A state agency, however, cannot be sued under § 1983 because a state agency is not a "person" under 42 U.S.C. § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 67 (1989).

In *Chin v. City of Baltimore*, 241 F. Supp. 2d 546 (D. Md. 2003), this Court held that BPD is subject to suit for violation of § 1983 because it "is too interconnected with the government of the City" to constitute a state agency. *Id.* at 548. This Court has repeatedly affirmed the holding in *Chin*. *See, e.g.*, *Nicholson v. Balt. Police Dep't*, No. DKC-20-3146, 2021 WL 1541667, 2021 U.S. Dist. LEXIS 75798, at *16 (D. Md. Apr. 20, 2021) (holding that "the BPD, while a state entity under Maryland law, is considered a municipal entity subject to suit for purposes of § 1983"); *Fish v. Mayor of Balt.*, No. CCB-17-1438, 2018 WL 348111, 2018 U.S. Dist. LEXIS 4222, at *9 (D. Md. Jan. 10, 2018) (holding that "BPD is not entitled to Eleventh Amendment immunity and, as a result, is a 'person' subject to suit under § 1983"). Accordingly, for purposes of an action for violation of § 1983, BPD is a local government entity.

To state a § 1983 claim against a municipality, a plaintiff must "adequately plead . . . the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994); *see also Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999) (stating that "it is by now well settled that a municipality is only liable under section 1983 if it causes such a deprivation through an official policy or custom"). However, "a municipality cannot be held liable . . . under § 1983 on a respondeat superior theory." *Monell*, 436 U.S. at 691. Municipal

liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694.

A plaintiff may allege four types of policies, customs, or practices for which a municipality may be held liable: "(1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifest[s] deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter*, 164 F.3d at 217).  Regardless of which theory a plaintiff proceeds under, a plaintiff asserting a § 1983 claim against a municipality must plead factual content that would allow the Court to draw a reasonable inference that: (1) the plaintiff has suffered a deprivation of a constitutional right; and (2) the violation of that right was caused by the enforcement of a municipal.  *See Monell*, 436 U.S. at 694; *Spell v. McDaniel*, 824 F.2d 1380, 1389 (4th Cir. 1987).

In Count IV, Plaintiff alleges that BPD "unlawfully deprived Plaintiff of her civil rights in violation of Sections 1981 and 1983 of the Civil Rights Act and the First Amendment when it retaliated against Plaintiff for having engaged in protected activity by complaining of discrimination on the basis of her race, thereby punishing Plaintiff for exercising her rights and discouraging her as well as others from continuing to exercise such rights in the future." (ECF No. 1 ¶ 105.)  This Court can dispose of Count IV without substantial analysis of whether Plaintiff has suffered a deprivation of a constitutional right and whether that deprivation was caused by an express policy, the decision of an official with final policy making

authority, through an omission, or through a policy and practice.  This is because Plaintiff's Complaint does not specify a policy, custom, or practice for which BPD may be held liable. Plaintiff's Complaint refers to "the pervasive culture and custom within BPD of treating African American Officers differently than White Officers when it came to promotions, disciplinary actions, and conduct," (*id.* ¶ 118), and briefly notes an August 2016 report by the U.S. Department of Justice detailing BPD's "widespread constitutional violations, the targeting of African Americans, and a culture of retaliation." (*Id.* ¶ 1.)  Nevertheless, the only individuals alleged in the Complaint to have suffered the sort of discriminatory treatment Plaintiff claims she suffered are Wanda Johnson and her husband, Marcus Johnson.  In short, her allegations are insufficient at the pleading stage to allege the existence of a policy or custom, the "extent" of which is "widespread or flagrant" enough for a condonation claim. *See Owens*, 767 F.3d at 403 (quoting *Spell*, 824 F.2d at 1387).   As such, Count IV is DISMISSED.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss (ECF No. 9) shall be GRANTED.  Plaintiff Wanda Johnson's Complaint (ECF No. 1) is DISMISSED pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  As a general rule, leave to amend a complaint to address deficiencies in an original complaint is freely given pursuant to Rule 15(a).  Indeed, there is authority that a plaintiff should be given at least one opportunity to amend a complaint before a dismissal of a case with prejudice.  *See Harvey v. CNN, Inc.*, 520 F. Supp. 3d 693, 725 (D. Md. 2021) (citing *Silva v. Bieluch*, 351 F.3d 1045, 1048 (11th Cir. 2003)).  However, there is authority that leave to amend does not need

to be granted unless requested by the plaintiff.  *Id.* (citing *Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 555–56 (5th Cir. 2007)).  Nevertheless, leave to amend may be denied if such amendment is deemed futile.  *Goode v. Cent. Va. Legal Aid Soc'y, Inc.*, 807 F.3d 619, 624 (4th Cir. 2015).

Plaintiff Wanda Johnson has alleged three claims under Title VII of the Civil Rights Act of 1964—race discrimination (Count I), hostile work environment (Count II), and retaliation (Count III); a *Monell* claim for violation of her civil rights under 42 U.S.C. § 1981 (Count IV); and violations under MFEPA (Count V) against her former employer, Defendant Baltimore Police Department.  Plaintiff has failed to plausibly claim how any conduct she endured at BPD was on account of her race or her engagement in a protected activity (Counts I, II, III, and V) or how any deprivation of a constitutional right resulted from an official policy or custom that is fairly attributable to BPD (Count IV).  Nevertheless, Plaintiff may file an Amended Complaint within fifteen days of this Opinion, i.e., by May 23, 2024.  Such an Amended Complaint may still be subject to dismissal by reason of repeated failure to cure deficiencies or futility of the amendment.  *Harvey*, 520 F. Supp. 3d at 725 (citing *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008)).  Accordingly, the DISMISSAL will initially be WITHOUT PREJUICE.  If an Amended Complaint is not filed by May 23, 2024, the Clerk of this Court is instructed to CLOSE this case with DISMISSAL WITH PREJUDICE.

A separate Order follows.


Date: May 8, 2024                                   _____/s/_____

                                                   Richard D. Bennett
                                                   United States Senior District Judge