**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

WANDA JOHNSON,                               *

    *Plaintiff*,                              *

    v.                                       *      Civil Action No. RDB-23-2215

BALT. POLICE DEPARTMENT,                     *

    *Defendant*.                              *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**<u>MEMORANDUM OPINION</u>**

On May 8, 2024, this Court granted Defendant Baltimore Police Defendant Baltimore Police Department's ("Defendant" or "BPD") Motion to Dismiss (ECF No. 9)[1] the Plaintiff Wanda Johnson's ("Plaintiff" or "Wanda Johnson") five-count Complaint (ECF No. 1). (ECF Nos. 18, 19.) Specifically, the Court dismissed Plaintiff's claims under federal discrimination law and the Maryland Fair Employment Practices Act ("MFEPA") without prejudice and afforded Johnson leave to amend. (*Id.*)

On June 14, 2024, Johnson filed an Amended Complaint (ECF No. 20), reasserting her claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17—one claim for race discrimination (Count I) (*id.* ¶¶ 84–105), one claim for hostile work environment (Count II) (*id.* ¶¶ 106–14), and one claim for retaliation (Count III) (*id.* ¶¶ 115–33); a *Monell*[2]

---

[1] For clarity, this Memorandum Opinion cites to the ECF generated page number, rather than the page number at the bottom of the parties' various submissions, unless otherwise indicated. Likewise, this Memorandum Opinion cites to the ECF generated document number, rather than the exhibit number provided by the parties' various submissions.

[2] In what is commonly referred as to a *Monell* claim, 42 U.S.C. § 1983 permits a plaintiff to bring a claim directly against a municipality if it causes a deprivation of a constitutional right through an official policy or custom. *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978).

claim for violation of her civil rights under 42 U.S.C. § 1983 (Count IV) (*id.* ¶¶ 134–56); and violations under MFEPA (Count V) (*id.* ¶¶ 157–66), against her former employer. Through Defendant's pending Motion to Dismiss the Amended Complaint (ECF No. 23), BPD seeks dismissal of all counts under Fed. R. Civ. P. 12(b)(6). Plaintiff responded (ECF No. 24), and Defendant replied (ECF No. 27). The parties' submissions have been reviewed and no hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons that follow, the Defendant's Motion to Dismiss the Amended Complaint (ECF No. 23) shall be GRANTED and Plaintiff's Amended Complaint (ECF No. 20) is DISMISSED WITH PREJUDICE.

## BACKGROUND

### I.    Factual Background

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). Except where otherwise indicated, the following facts are derived from Plaintiff's Amended Complaint (ECF No. 20), and accepted as true for the purpose of Defendant's Motion to Dismiss the Amended Complaint (ECF No. 23).

The instant case arises out of events that transpired following a fight at Norma Jean's nightclub in Baltimore on August 26, 2018. (ECF No. 20 ¶¶ 22–31.) At the time of the incident, Plaintiff Wanda Johnson, who is Black, was employed as a police officer with the Defendant Baltimore Police Department and engaged to her now-husband, Marcus Johnson,

a fellow BPD police officer.[3]  (*Id.* ¶¶ 22–23.)  In brief, on August 26, 2018, Wanda Johnson and other off-duty police officers had gathered at Norma Jean's for Plaintiff's bachelorette party when an altercation ensued between members of Plaintiff's party and two other female patrons inside the nightclub.  (*Id.* ¶¶ 23–26.)  After a member of Plaintiff's bachelorette party notified Marcus Johnson about the altercation, Marcus Johnson, who was on patrol, "contacted his supervisor to request permission to enter the venue and escort Plaintiff to safety."  (*Id.* ¶ 27)

Sometime after Marcus Johnson arrived on the scene, a physical altercation ensued on the sidewalk outside Norma Jean's between Henrietta Middleton ("Middleton"), an off-duty BPD police officer attending Plaintiff's bachelorette, and an on-duty BPD officer reporting to the scene, Marlon Koushall ("Koushall").  (*Id.* ¶¶ 28–29.)  The altercation between Middleton and Koushall was witnessed by another off-duty BPD police officer attending Plaintiff's bachelorette, Dominique Wiggins[4] ("Wiggins"), who attempted to intervene and render aid to

---

[3] In an earlier filed, now dismissed case relating to the same incident, Marcus Johnson brought claims under Title VII—one claim for race discrimination and one claim for sex discrimination; a *Monell* claim; and a claim under MFEPA against Baltimore Police Department.  *See* Compl., *Johnson v. Balt. Police Dep't*, No. EA-22-1356 (D. Md. June 4, 2022), ECF No. 1.  After BPD moved to dismiss Marcus Johnson's complaint pursuant to Rule 12(b)(6), Judge Maddox of this Court found that the complaint did not include sufficient factual allegations to support his claims under Title VII, 42 U.S.C. § 1983, or MFEPA, and further found that the Title VII claims were time-barred.  *Johnson v. Balt. Police Dep't*, No. EA-22-1356, 2023 WL 6381487, 2023 U.S. Dist. LEXIS 174959, at *14 (D. Md. Sep. 29, 2023).  Nevertheless, Judge Maddox dismissed Marcus Johnson's complaint without prejudice and gave him 21 days to file an amended complaint.  After several months passed and Marcus Johnson did not file an amended complaint, his case was reassigned to Magistrate Judge Aslan of this Court, who converted the dismissal to dismissal with prejudice and closed the case.  *Johnson*, No. EA-22-1356 (D. Md. Jan. 1, 2024), ECF No. 23.

[4] Wiggins also filed a complaint against BPD relating to the same incident, alleging claims under Title VII for race and sex discrimination; a *Monell* claim; and a claim under MFEPA.  Compl., *Wiggins v. Balt. Police Dep't*, No. EA-22-1089 (D. Md. May 4, 2022), ECF No. 1.  After BPD moved to dismiss Wiggins's complaint pursuant to Rule 12(b)(6), Judge Maddox found that the complaint did not include sufficient factual allegations to support his claims under Title VII, 42 U.S.C. § 1983, or MFEPA.  *Wiggins v. Balt. Police Dep't*, No. EA-22-1089, 2023 U.S. Dist. LEXIS 174936, 2023 WL 6381515 (D. Md. Sep. 29, 2023).  While Judge Maddox dismissed Wiggins's complaint without prejudice and gave her 21 days to file an amended complaint, she did not refile and the case

Middleton after she witnessed Koushall approach and strike Middleton in her face.  (*Id.* ¶¶ 29–30.)  Middleton was removed from the scene in handcuffs, (*id.* ¶ 30), though Koushall was ultimately charged for assault on Middleton several months later.  (*Id.* ¶ 38.)

Shortly after the incident, BPD's Internal Affairs Division[5] ("Internal Affairs" or "IAD," later known as "Public Integrity Bureau" or "PIB") interviewed all BPD personnel who were at Norma Jean's, including Wanda Johnson.  (*Id.* ¶¶ 32–33.)  Plaintiff alleges that mistreatment by the BPD against her followed, beginning shortly after the August 2018 incident.  The mistreatment evolved over the next several years, from hostility from coworkers and superiors to a disciplinary investigation eventually leading to disciplinary charges against Plaintiff, ultimately culminating with Plaintiff's alleged "forced" resignation in June 2022.

Wanda Johnson first alleges that "due to the conduct of [] Koushall and BPD's attempts to protect him, . . . Internal Affairs [d]etectives chose to fabricate allegations against Plaintiff and her husband regarding their roles and alleged motives to fabricate statements in the incident."  (*Id.* ¶ 34.)  Plaintiff's allegations with respect to fabricated allegations against her and her husband focus on BPD officer Yolanda Nelson ("Nelson"), who Plaintiff alleges "wrote a false report about the August 2018 [incident]."  (Id. ¶ 60.)  Specifically, Wanda Johnson alleges that Nelson falsely claimed that the two other female nightclub patrons involved in the altercation inside the nightclub identified Plaintiff as the aggressor.[6]  (*Id.*)

was reassigned to Magistrate Judge Aslan of this Court, who converted the dismissal to dismissal with prejudice and closed the case.  *Wiggins*, No. EA-22-1089 (D. Md. Jan. 18, 2024), ECF No. 21.

[5]  The Internal Affairs division was rebranded as the Public Integrity Bureau in 2019.  *Crime Reduction & Departmental Transformation Plan*, BALT. POLICE DEP'T 5 (June 2019), https://www.baltimorepolice.org/sites/default/files/General%20Website%20PDFs/BPD_Crime_Reduction_and_Departmental_Transformation_Plan.pdf.

[6]  Wanda Johnson further alleges that Officer Nelson referenced the same during her "recorded statement to PIB investigator Detective [Bruce] Gertz," promising to interview the women again, though Plaintiff claims

According to Plaintiff, Nelson's body-worn camera footage does not mention any physical altercation with Plaintiff, but rather shows the two women identifying the nightclub's security as their attacker. (*Id.*) She further complains that in October 2018, she was "blocked from transferring to another unit due to the incident." (*Id.* ¶ 35.)

Sometime in January 2019, Plaintiff testified against Koushall before a grand jury, (*id.* ¶ 37), and Koushall was subsequently charged for the August 26, 2018 incident. (*Id.* ¶ 38.) Plaintiff claims she "was never accused of any wrongdoing related to the incident" from the time of the incident until June 2019. (*Id.* ¶ 36.)

She alleges that in early 2019, a BPD officer told her she was being "blackballed" by BPD and that "Internal Affairs is up your ass." (*Id.* ¶ 39.) She alleges that in April 2019, BPD officer Nelson was "caught on camera in the lobby of [a] chiropractor office, in her police uniform, discussing the 2018 incident and making false accusations . . . about Plaintiff to other BPD members." (*Id.* ¶ 56.) Wanda Johnson alleges that her coworkers "started to come to Plaintiff as a result of all the rumors, questioning . . . how she got into [the] fight" and whether "[any]one would ever want to work with and/or for Plaintiff." (*Id.* ¶ 57.)

In or around June 2019, Internal Affairs notified Plaintiff that she was being investigated in relation to the August 2018 incident. (*Id.* ¶ 40.) Sometime thereafter, the Office of the State's Attorney for Baltimore City ("SAO") sent a letter to the BPD announcing that their office was declining to pursue charges against Plaintiff. (*Id.* ¶ 45.); *see Harrison v. Johnson*, Nos. 1209, 1229, 1230, 2021 WL 4841134, 2021 Md. App. LEXIS 929, at *2 (Md. Ct.

---

"Officer Nelson never produced any follow-up reports . . . [or] submit [body-worn camera] footage." (ECF No. 20 ¶ 62.)

Spec. App. Oct. 18, 2021).

Meanwhile, in September 2019, Plaintiff testified for the State during Koushall's bench trial. (ECF No. 20 ¶ 41.) Plaintiff alleges that "[an officer] from IAD was inside the courtroom monitoring everyone's testimony," and claims the officer "kept staring" at Plaintiff as she testified. (*Id.* ¶ 42.) Plaintiff further alleges that outside of the courtroom and in the presence of Middleton, Wiggins, and Marcus Johnson, Assistant State's Attorney Steve Trostle stated to Plaintiff: "I feel bad for you; just be prepared that the shit storm is coming because IAD is coming for you." (*Id.* ¶ 43.) Ultimately, Koushall was found guilty of second-degree assault and misconduct in office, and his conviction was affirmed by the Appellate Court of Maryland[7] and the Maryland Supreme Court.[8] (*Id.* ¶¶ 41, 44); *see Koushall v. State*, No. 2031, 2021 Md. App. LEXIS 36, 2021 WL 225810 (Md. Ct. Spec. App. Jan. 22, 2021); *Koushall v. State*, 277 A.3d 403 (Md. 2022).

On June 4, 2020, BPD IAD interviewed Wanda Johnson as part of the internal disciplinary investigation against her. (ECF No. 20 ¶ 40); *Harrison*, 2021 Md. App. LEXIS 929, at *2. On June 11, 2020, disciplinary charges were filed against her, Wiggins, and Marcus Johnson, *Harrison*, 2021 Md. App. LEXIS 929, at *2, 6–8, charging "Plaintiff with conduct unbecoming [of] a police officer, misconduct/VCS-assault, neglect/general, and false

---

[7] At the time of *Koushall*, the Appellate Court of Maryland was named the "Maryland Court of Special Appeals." At the November 8, 2022 general election, voters in Maryland ratified a constitutional amendment changing the name of the "Maryland Court of Special Appeals" to the "Appellate Court of Maryland." The name change took effect on December 14, 2022.

[8] At the time of *Koushall*, the Maryland Supreme Court was named the "Court of Appeals of Maryland." At the November 8, 2022 general election, voters in Maryland ratified a constitutional amendment changing the name of the "Court of Appeals of Maryland" to the "Maryland Supreme Court." The name change took effect on December 14, 2022.

statement."[9]  (ECF No. 20 ¶ 46.)  Plaintiff alleges that she was promptly suspended with pay. (*Id* ¶ 47.)

On August 26, 2020, Wanda Johnson filed a complaint and petition for a show cause order in the Circuit Court for Baltimore City, requesting the court require BPD to show cause why the disciplinary charges against her were not time-barred and requesting that the court enjoin BPD from pursuing the charges filed against her.  *Harrison*, 2021 Md. App. LEXIS 929, at *2, 8–9.  While the circuit court granted Wanda Johnson's petition, on October 18, 2021, the Appellate Court of Maryland[10] reversed the circuit court's decision, holding that BPD could proceed with the disciplinary charges against Johnson.  *Id.* at *5–6, 22–27.  While Plaintiff's Amended Complaint alleges that Maryland's intermediate appellate court found the charges against Plaintiff were time-barred, (ECF No. 20 ¶ 49), that is not reflected in the record.  *Harrison*, 2021 Md. App. LEXIS 929, at *5–6, 22–27.  The court held that the false statement charges brought against Wanda Johnson seven days after the false statements were allegedly made on June 4, 2020 were not time-barred and that the charges against Plaintiff concerning violations committed on August 28, 2018 were also not time-barred because the applicable limitations period did not begin running until June 14, 2019, when the SAO sent its first declination letter.  *Id.*

As a result of the Appellate Court of Maryland's finding that the charges against Johnson were not time-barred, the disciplinary matter against Plaintiff proceeded to an

---

[9]  Specifically, Plaintiff was accused of committing an assault on August 26, 2018, failing to notify her supervisors of the assault on August 26, 2018, making false statements in her interview on August 26, 2018, and making false statements in her interview on June 4, 2020.  *Harrison*, 2021 Md. App. LEXIS 929, at *8.
[10]  Similar to footnote 7, at the time of *Harrison*, the Appellate Court of Maryland was named the "Maryland Court of Special Appeals."

administrative trial board on May 24–25, 2022, pursuant to Section 3-107 of the Public Safety Article of the Maryland Code. (ECF No. 20 ¶ 51.) Plaintiff alleges that BPD "attempted to terminate Plaintiff on the basis of alleged violations of BPD policy for assault, false statements, interference with internal investigations, and misconduct in failing to report the altercation to her supervisors, despite the fact that [she] was off-duty when the incident occurred[] and consistently denied the allegations." (*Id.*) She further contends that "the false charges against [her] were nonetheless sustained," "[d]espite numerous errors and misconduct committed by [investigating officers]." (*Id.* ¶ 66.)

In her Amended Complaint, Plaintiff makes many allegations with respect to the investigation and trial board. Wanda Johnson complains that she "could not obtain any information or specifics about the investigation against her," with BPD only releasing her "case file . . . a month before her trial board hearing." (*Id.* ¶ 59.) She complains that Gertz "was still on probation at the time he was assigned to investigate Plaintiff" and "should have never been assigned as an investigator to the high-profile investigation against Plaintiff given his lack of experience," without providing any additional detail on either point. (*Id.* ¶¶ 76, 77.) She contends that he "made serious mistakes during investigations." (*Id.* ¶ 78.)

With respect to the trial board proceeding, Plaintiff alleges that "it was openly acknowledged" during the trial board hearing that Nelson "filed a false report about the August 2018 incident." (*Id.* ¶ 61.) She further alleges that Gertz testified that he had reviewed Nelson's body-worn camera footage and written report, and had observed discrepancies between the two, but Gertz "neither questioned nor charged Officer Nelson for submitting a false report and giving a false statement to PIB." (*Id.* ¶¶ 63, 65.) Plaintiff further alleges that

Gertz made a false statement during the trial board hearing when he stated "that he did not request declaration letters on Plaintiff, while his emails revealed otherwise." (*Id.* ¶ 64.)

Plaintiff alleges that on May 31, 2022, "[she] filed an internal complaint with Anita Pitts [of] PIB" regarding the above-referenced conduct of Nelson and Gertz. (*Id.* ¶ 67.) And then, on June 1, 2022, Plaintiff alleges that she "was forced . . . to submit her resignation in lieu of termination[.]" (*Id.* ¶ 52.)

With respect to Plaintiff's internal complaint, on August 8, 2022, Pitts emailed Plaintiff, noting that her case against Officer Nelson and Detective Gertz was "being properly investigated" and that the accused officers would be interviewed. (*Id.* ¶ 70.) On November 29, 2022, Pitts, who was the officer assigned to investigate Plaintiff's internal complaint, advised Plaintiff that her complaint "w[ould] be closed out soon." (*Id.* ¶ 71.) In general, Plaintiff complains that the Public Integrity Bureau did not communicate the status of her complaint as it worked through the investigation. (*Id.* ¶¶ 72–74.) Sometime around April 27, 2023, "Plaintiff finally found out that her case against Officer Nelson and Detective Gertz was unfounded and that Ms. Pitts was promoted." (*Id.* ¶ 75.)

As noted above, Plaintiff generally complains that she was subjected to a (1) "false investigation," (2) precluded from working overtime during her administrative suspension with pay, and (3) subjected to more severe punishment than non-Black BPD personnel suspected of misconduct. With respect to the false investigation, Wanda Johnson alleges that "[i]t is well known . . . that BPD routinely suspends officers for extended periods, keeps them in the dark during false investigations, and ultimately forces them out of the Department." (*Id.* ¶ 79.) While the Amended Complaint notes that "Black officers, in particular, have been

targeted," and mentions that "Plaintiff and her husband were not the only ones affected by this systemic mistreatment," the Amended Complaint does not mention another officer subjected to "false investigations." (*Id.*) Nor does the Amended Complaint suggest that BPD no longer employs Marcus Johnson.

With respect to Plaintiff's complaint about not being able to work overtime during her administrative suspension with pay, Plaintiff alleges that "she was still working in police capacity but without the ability to arrest" and that "[s]he should have been able to still work overtime." (*Id.* ¶¶ 55, 58.) She cites four examples where non-Black BPD personnel "were allowed to work overtime with no issues," including:

> (1) an instance where a white male officer was suspended for discharging his weapon and subsequently shooting his dog with his duty weapon but was able to work overtime during his suspension;
>
> (2) an instance where a white male officer was suspended for a DUI but was able to work overtime during suspension;
>
> (3) an instance where a white male officer was suspended for domestic violence but was able to work overtime during suspension; and
>
> (4) an instance where a white male officer was suspended for 20 years for manslaughter and misconduct but was able to work overtime during suspension.

(*Id.* ¶ 55.)

Lastly, Plaintiff states she "was shocked that she was immediately moved towards termination and ultimately forced to resign," citing examples where non-Black BPD personnel suspected of misconduct or other severe offenses were not subjected to the same punishment. (*Id.* ¶ 54.) Cited examples include:

> (1) an instance where a white male officer called an applicant a racial slur was given the opportunity to retire without reprimand;

(2) an instance where a white male officer accrued multiple DUI charges and a fleeing and eluding police charge was "ultimately suspended then reinstated with minimal punishment and allowed to keep his rank";

(3) an instance where a white male officer received no suspension but received a severe letter of reprimand and loss of leave after he was charged with "use of force" for punching a male suffering from a behavioral crisis in the face several times, though the officer was ultimately suspended for a police officer involved shooting;

(4) an instance where a white female officer received no suspension after "several sustained uses of force and false statement charges [were] brought against her" and was ultimately promoted;

(5) an instance where two white officers (female and male) who were married to each other were involved in a domestic assault and subsequently charged with making false statements to Harford County Sheriff's Office, though the trial board hearing was dismissed and the charges against them dropped "due to what was referred to as an improper investigation by the investigating detective," with Plaintiff highlighting that both officers were subsequently promoted;

(6) an instance where a white male officer "physically assaulted" another officer "but was not charged with any misconduct";

(7) an instance where a white female officer was charged with disorderly conduct and misconduct and "charged with an emergency petition to be taken into custody and receive mental evaluation," with Plaintiff highlighting that while the white female officer was suspended due to these incidents, she was subsequently promoted;

(8) an instance where a non-Black female officer "made a false statement . . . in an attempt to file a fraudulent worker's compensation claim," but the officer faced no consequence for the false claim; and

(9) an instance where a white male officer breached protocol after crashing his BPD vehicle when he "failed to report the incident, opting instead to go home," who was "suspended and faced a trial board where he was found guilty" and ultimately "only demoted."

(*Id.*)  Plaintiff further cites to Gertz's conduct during Plaintiff's trial board, asserting the white male officer "made a false statement . . . that he did not request declaration letters on Plaintiff while his emails revealed otherwise," emphasizing that he faced no consequences.  (*Id.*)

Plaintiff also references Koushall, whom she contends also made false statements to the Department in reference to the August 2018 incident and "was not properly administratively charged or disciplined for his misconduct," and another white male officer who "was internally charged for tampering with an internal investigation and making false statements . . . attempt[ing] to protect Sgt. Koushall." (*Id.*)

## II.    Procedural History

On February 16, 2021, Plaintiff filed a charge with the United States Equal Employment Opportunity Commission ("EEOC"). (ECF No. 20 ¶ 8; *see also* ECF No. 9-3.) Therein, Wanda Johnson alleged that:

> On or about June 11, 2020, I was put on suspension with pay following an August 2018 incident in which I got into a physical altercation with another woman. The charges were later dropped on or about November 9, 2020. On December 2, 2020, I was subjected to unequal terms and conditions of employment when I was informed that [BPD] was seeking to keep me on suspension while seeking termination for allegedly making false statements during the investigation. [Several other white BPD officers] all have allegedly made false statements during investigations. They were all suspended, but [BPD] did not seek termination for them. . . . I was not given a reason for the difference in treatment. . . . I believe I was discriminated against with respect to suspension and unequal terms and conditions of employment based on my race (Black) and in retaliation for engaging in a protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended.

(ECF No. 9-3.) The EEOC declined to proceed with her claim and therefore issued her a right-to-sue letter, "which Plaintiff received on May 15, 2023." (ECF No. 20 ¶ 10.) That letter provided Plaintiff a ninety-day window following receipt to file a lawsuit. 42 U.S.C. § 2000e-5(f).

On August 14, 2023, the last day of the ninety-day period, Plaintiff initiated the instant lawsuit, filing a five-count complaint in this Court. (ECF No. 1.) On November 6, 2023,

Defendant moved to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6).  (ECF No. 9.)
After the matter was fully briefed (ECF Nos. 10, 11), this Court granted the Motion to Dismiss
(ECF No. 9) and dismissed Plaintiff's claims without prejudice and afforded Johnson leave to
amend.  (ECF Nos. 15, 16.)

On June 14, 2024, Johnson filed an Amended Complaint (ECF No. 20), reasserting her
claims under Title VII of the Civil Rights Act of 1964—one claim for race discrimination
(Count I) (*id.* ¶¶ 84–105), one claim for hostile work environment (Count II) (*id.* ¶¶ 106–14),
and one claim for retaliation (Count III) (*id.* ¶¶ 115–33); a *Monell* claim for violation of her
civil rights under 42 U.S.C. § 1983 (Count IV) (*id.* ¶¶ 134–56); and violations under MFEPA
(Count V) (*id.* ¶¶ 157–66), against her former employer.  On June 28, 2024, BPD moved to
dismiss the Amended Complaint.  (ECF No. 23.)  Plaintiff responded, (ECF No. 24), and
BPD replied.  (ECF No. 27.)  The matter is now ripe for review.

## STANDARD OF REVIEW

Baltimore Police Department argues dismissal for failure to state a claim under Federal
Rule of Civil Procedure 12(b)(6) for all claims, and alternatively argues failure to state a claim
for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) asserting
sovereign immunity as to Plaintiff's Maryland Fair Employment Practices Act claim.
Accordingly, each standard of review is explained below.

### I.    Motion to Dismiss for Failure to State a Claim

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain
a "short and plain statement of the claim showing that the pleader is entitled to relief."  FED.
R. CIV. P 8(a)(2).  The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and

not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotations omitted).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

When ruling on a motion to dismiss, a court may only "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citing *Sec'y of State for Def. v. Trimble Nav. Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights

asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citing *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 86 (E.D. Va. 2007)). In support of its previous Motion to Dismiss (ECF No. 9), Defendant submitted (1) Plaintiff's February 16, 2021 EEOC charge (ECF No. 9-3); (2) the Memorandum of Understanding between the Baltimore City Police Department and the Baltimore City Lodge No. 3, Fraternal Order of Police, Inc. Unit II: Police Sergeants and Police Lieutenants for Fiscal Years 2019–2021 (ECF No. 9-4); (3) the Suspension of Police Powers form dated June 11, 2020 suspending Plaintiff with pay pending termination (ECF No. 9-5); and (4) Baltimore Police Policy 310, Disciplinary/Failure to Appear And Traffic Matrix published October 25, 2017 (ECF No. 9-6). These documents are all integral to Wanda Johnson's Amended Complaint.

## II.    Motion to Dismiss for Lack of Subject Matter Jurisdiction

Baltimore Police Department alternatively asserts a facial challenge to this Court's subject matter jurisdiction over Wanda Johnson's MFEPA claim, arguing that it is immune to suit in federal court under the Eleventh Amendment to the United States Constitution. *See Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) (holding that sovereign immunity deprives the court of subject matter jurisdiction). A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint. *See Davis v. Thompson*, 367 F.Supp.2d 792, 799 (D. Md. 2005). A challenge to jurisdiction under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d

187, 192 (4th Cir. 2009) (citation omitted). Here, Baltimore Police Department presents a facial challenge and accordingly "must show that [the] complaint fails to allege facts upon which subject matter can be predicated." *Amador v. Mnuchin*, 476 F. Supp. 3d 125, 139 (D. Md. 2020) (quoting *Hutton v. Nat'l Bd. of Exam'rs Inc.*, 892 F.3d 613, 620–21 (4th Cir. 2018)).

## ANALYSIS

Through her Amended Complaint, Wanda Johnson asserts three claims under Title VII of the Civil Rights Act of 1964—race discrimination, hostile work environment, and retaliation; a *Monell* claim for violation of her civil rights under 42 U.S.C. § 1983; and violations under Maryland's Fair Employment Practices Act, against her former employer, Defendant Baltimore Police Department. (ECF No. 20.) Through its Motion to Dismiss the Amended Complaint, Baltimore Police Department seeks dismissal of all counts. (ECF No. 23.)

## I.    Plaintiff's Title VII Claims (Counts I, II, and III)

Title VII of the Civil Rights Act of 1964 proscribes discrimination in employment on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). The Act also prohibits retaliation against persons who assert rights under the statute. *Id.* § 2000e-3(a).

### A.  Exhaustion of Administrative Remedies

As with its prior Memorandum Opinion, this Court begins with the issue of exhaustion. As a precondition to the commencement of a Title VII action in court, a complainant must first file a charge with the EEOC. *Fort Bend Cnty. v. Davis*, 587 U.S. 541, 543 (2019) (citing 42 U.S.C. § 2000e-5(e)(1), (f)(1)). Pursuant to 42 U.S.C. § 2000e-5(e)(1), a plaintiff must file an administrative charge with the EEOC within 180 days of the alleged misconduct. 42 U.S.C. § 2000e-5(e)(1). "This period is extended to 300 days in a deferral state, one in which 'state

law proscribes the alleged employment practice and the charge has initially been filed with a state deferral agency.'" *Valderrama v. Honeywell Tech. Solutions, Inc.*, 473 F. Supp. 2d 658, 662 n.4 (4th Cir. 2007) (quoting *Williams v. Giant Food Inc.*, 370 F.3d 423, 428 (4th Cir. 2004)). Maryland is a deferral state; therefore, Plaintiff's claims of discrimination under Title VII, were required to be filed no more than 300 days after the alleged unlawful employment practice.

Upon receiving a charge, the EEOC must notify the employer and investigate the allegations. 42 U.S.C. § 2000e-5(b). If the EEOC finds "reasonable cause" to believe the charge is true, the EEOC must "endeavor to eliminate [the] alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." *Id.* If the EEOC cannot achieve a voluntary settlement, it may "bring a civil action" against the employer in court. *Id.* § 2000e-5(f)(1). On the other hand, where the EEOC concludes that there is "n[o] reasonable cause to believe that the charge is true," Title VII directs the EEOC to dismiss the charge and notify the complainant of his right to sue in court. *Id.* § 2000e-5(b), f(1). This notice is commonly called a "right-to-sue letter." *See, e.g., Laber v. Harvey*, 438 F.3d 404 (4th Cir. 2006). A complainant has 90 days to file suit in federal or state court after being notified of the right to sue.[11] 42 U.S.C. § 2000e-5(f)(1).

In *Fort Bend Cnty. v. Davis*, 587 U.S. 541 (2019), the Supreme Court emphasized that a

---

[11] The Court briefly addresses the issue of timeliness of Plaintiff's initiation of this lawsuit. As noted above, a claimant must "file[] [an] action within ninety days of receiving the notice of right to sue, as required by 42 U.S.C. § 2000e-5(f)(1)." *Harvey v. City of New Bern Police Dep't*, 813 F.2d 652, 653 (4th Cir. 1987); *see also Quinn v. Copart of Connecticut, Inc.*, 791 F. App'x 393, 395 (4th Cir. 2019) (explaining that to assert a cause of action under Title VII, "an aggrieved person [must] file a civil action within 90 days of receiving a right-to-sue letter from the EEOC") (citing 42 U.S.C. § 2000e-5(f)(1)). In her Amended Complaint, Plaintiff alleges that she received the EEOC's right-to-sue letter on Monday, May 15, 2023. (ECF No. 20 ¶ 10). As Plaintiff aptly notes in her Amended Complaint, ninety days later would be Sunday, August 13, 2023. (*Id.* ¶ 11.) As such, Plaintiff's Complaint was timely filed on Monday, August 14, 2023, by operation of Fed. R. Civ. P. 6(a)(1)(C).

plaintiff's failure to exhaust administrative remedies does not divest the court of jurisdiction. *Id.* at 548–49. Rather, exhaustion is a "claim-processing rule," and it is "'mandatory' in the sense that a court must enforce the rule if a party 'properly raises it.'" *Id.* at 549 (cleaned up) (quoting *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curiam)). As this Court has previously noted, although a defendant may waive arguments related to administrative exhaustion, if asserted in a timely fashion such objections may warrant dismissal under Rule 12(b)(6). *See Kenion v. Skanska USA Bldg., Inc.*, No. RDB-18-3344, 2019 U.S. Dist. LEXIS 156793, 2019 WL 4393296, at *4 (D. Md. Sept. 13, 2019).

Title VII's administrative exhaustion process has substantive effect. Generally, it limits the scope of a plaintiff's federal lawsuit to those parties and claims named in the administrative charge. 42 U.S.C. § 2000e-5(f)(1); *Sydnor v. Fairfax Cnty., Va.*, 681 F.3d 591, 593 (4th Cir. 2012); *Causey v. Balog*, 162 F.3d 795, 800 (4th Cir. 1998. However, because "EEOC charges often are not completed by lawyers," the Fourth Circuit has instructed courts to "construe them liberally." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005); *Sydnor*, 681 F.3d at 594 ("[T]he exhaustion requirement should not become a tripwire for hapless plaintiffs."). Federal courts may hear claims not presented to the EEOC so long as they are "'reasonably related'" to the plaintiff's EEOC charge "'and can be expected to follow from a reasonable administrative investigation[.]'" *Sydnor*, 681 F.3d at 594 (quoting *Smith v. First Union Nat. Bank*, 202 F.3d 234, 247 (4th Cir. 2000)).

Defendant "reasserts its argument that Johnson's claims exceeded the scope of her administrative remedies" set forth in its first Motion to Dismiss (ECF No. 23-1 at 6 (citing ECF No. 9-2 at 5–7).) As noted in this Court's prior Memorandum Opinion, "EEOC charges

are to be construed liberally." (ECF No. 15 at 10–14 (quoting *Johnson v. Balt. Police Dep't*, No. MJM-22-1356, 2023 WL 6381487, 2023 U.S. Dist. LEXIS 174959, at *14 (D. Md. Sep. 29, 2023) (citing *Chacko*, 429 F.3d at 509; *Sydnor*, 681 F.3d at 594)).) As noted above, federal courts may hear claims not presented to the EEOC so long as they are "reasonably related" to the plaintiff's EEOC charge "and can be expected to follow from a reasonable administrative investigation." *Sydnor*, 681 F.3d at 594 (citation omitted).

In Plaintiff's EEOC charge, she alleged discrimination *based on her race* and *retaliation*. (ECF No. 9-3.) The narrative portion of the EEOC charge provides, in pertinent part, that Plaintiff "was subjected to unequal terms and conditions of employment when [she] was informed [on December 2, 2020] that [BPD] was seeking to keep [her] on suspension while seeking termination for allegedly making false statements during the investigation." (*Id.*) She cites to instances where white BPD personnel were suspended following accusations of making false statements, though she indicates that "[BPD] did not seek termination for them." (*Id.*)

In her Amended Complaint, Plaintiff alleges that, by continuing a disciplinary investigating against her that ultimately resulted in formal charges and her "forced" resignation, Defendant discriminated against her based on her race, subjected her to a hostile work environment, and retaliated against her for submitting internal complaints. (*Id.* ¶¶ 84–105, 106–114, 115–133.) As noted, it does not appear that the EEOC charge (ECF No. 9-3) was filed by an attorney, thus the Court must construe the EEOC charge liberally. *Chacko*, 429 F.3d at 509. Broadly speaking, the allegations in Plaintiff's Amended Complaint with respect to the continued disciplinary investigation are related to the claim in the EEOC charge.

Arguably, the allegations in the suit would have been "expected to follow from a reasonable administrative investigation." *Sydnor*, 681 F.3d at 594 (citation omitted). As such, under the circumstances, the allegations in Plaintiff's Title VII claims (Counts I, II, and III) are "reasonably related" to the EEOC charge. *Id.* The Court proceeds to analyze whether the claims are sufficiently pled.

### B. Plaintiff's Race Discrimination Claim (Count I)

To allege disparate treatment without direct evidence of animus under Title VII, "a plaintiff must plead: '(1) [her] membership in a protected class; (2) [her] satisfactory job performance; (3) an adverse employment action; and (4) similarly situated employees outside the protected class who received more favorable treatment.'" *Bliss v. Garland*, No. 122CV563PTGIDD, 2023 U.S. Dist. LEXIS 124862, 2023 WL 4627435, at *6 (E.D. Va. July 19, 2023) (citing *Tabb v. Bd. of Ed. of Durham Pub. Schs.*, 29 F.4th 148, 157 (4th Cir. 2022)). To survive a motion to dismiss, a claim for discrimination need not establish a prima facie case. *McCleary-Evans v. Md. DOT*, 780 F.3d 582, 584 (4th Cir. 2015) (citing *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 191 (4th Cir. 2010)); *Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 288 (4th Cir. 2012). But, such a claim must allege facts "'that plausibly state a violation of Title VII 'above a speculative level.'" *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 617 (4th Cir. 2020) (quoting *Coleman*, 626 F.3d at 190). Review of the elements of a prima facie claim, set forth above, are helpful in assessing whether Plaintiff has stated a plausible discrimination claim in her Amended Complaint.

BPD contends that Plaintiff's discrimination claim should be dismissed on the ground that it is substantively deficient. According to Defendant, Plaintiff has failed to allege any facts

that, if proven, would establish that she suffered an adverse employment action and has not

adequately asserted that the alleged events were the result of discriminatory animus. (ECF

No. 23-1 at 6–10.)

### 1. Adverse Employment Action

With respect to the adverse employment action requirement, "the existence of some

adverse employment action is required" for a plaintiff to prevail on a Title VII discrimination

claim. *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007); *James v. Booz-Allen &*

*Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004). "An adverse employment action is a

discriminatory act that adversely affects the terms, conditions, or benefits of the plaintiff's

employment." *Holland*, 487 F.3d at 219 (cleaned up). As the Supreme Court explained in

*Muldrow v. City of St. Louis, Mo.*, 601 U.S. 346 (2024), a plaintiff must allege "some injury

respecting her employment terms and conditions," but that the injury need not be "significant"

or "substantial." *Id.* at 359.

In her response, Plaintiff points to two adverse employment actions: her inability to

work overtime while suspended with pay, (ECF No. 24-1 at 3–5), and her

"forced . . . resign[ation]," (*id.* at 5). Consistent with this Court's prior Memorandum Opinion

(ECF No. 15), this Court again finds that Plaintiff's allegation that she was forced to resign

satisfies the adverse action requirement of Plaintiff's disparate treatment claim under Title VII.

(*Id.* at 18.) As noted previously, it is "well-established" that an involuntary resignation

amounting to a constructive discharge satisfies the adverse action prong in Title VII cases.

*Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1354 (4th Cir. 1995); *see also Stone v. Univ. of Md.*

*Med. Sys. Corp.*, 855 F.2d 167, 173 (4th Cir. 1988) (holding that coerced resignation amounts

to a constructive discharge).  While BPD contends that Plaintiff's allegations on this point are insufficient as the Amended Complaint provides no details on how or by whom she was forced to resign, (ECF No. 23-1 at 8; ECF No. 27 at 3), the Court is satisfied that, the facts alleged are sufficient to state an adverse employment action at the pleading stage with respect to Plaintiff's claim that BPD forced her to resign.

With respect to her inability to work overtime, Wanda Johnson characterizes the "loss of compensation due to the absence of overtime opportunities [from June 2020 to May 2022]" as "substantial" in her response to the Defendant's Motion.  (ECF No. 24-1 at 4.)  However, the Court must look to her Amended Complaint.  Therein, Plaintiff complains that "when [she] was administratively suspended with pay, . . . [s]he should have been able to still work overtime."  (ECF No. 20 ¶ 55; *see also id.* ¶ 58 ("Plaintiff was not allowed to work overtime although she was suspended with pay and was working in police capacity just without the ability to arrest.").)  She further complains that other suspended officers were able to work overtime during suspension—one individual who discharged his weapon and shot his dog with his duty weapon; one individual who was charged with a DUI; one individual suspended for domestic violence; and one individual suspended for manslaughter and misconduct.  (*Id.* ¶ 55)  Although courts have held that a denial of overtime pay can be an adverse employment action in certain circumstances, the facts alleged in the present action are insufficient.  *Hwang v. Becerra*, No. TDC-20-1025, 2022 U.S. Dist. LEXIS 149877, 2022 WL 3577734 (D. Md. Aug. 19, 2022) (citing *Formella v. Brennan*, 817 F.3d 503, 511 (7th Cir. 2016) (holding that the denial of overtime or premium pay that was a "significant and expected" part of an employee's compensation may constitute an adverse employment action); *Thorn v. Sebelius*, 766 F. Supp.

2d 585 (D. Md. 2011) (stating that a salaried employee required to work more hours with no change in pay may be subject to an adverse employment action because there was an effective pay cut)). Simply stated, Plaintiff fails to allege that she sought overtime and that those requests were denied. (*See* ECF No. 20 ¶¶ 55, 58.) While Plaintiff insists that her allegation that she "was not allowed to work overtime" (*id.* ¶ 58) "implies she sought but was denied these hours" (ECF No. 24 at 4–5), such conclusory allegation are appropriately rejected under the 12(b)(6) standard.

Nevertheless, this Court, as noted above, finds that Plaintiff's allegation that she was forced to resign satisfies the adverse action requirement of Plaintiff's disparate treatment claim under Title VII. Accordingly, the Court proceeds to analyze whether Plaintiff adequately alleged that a similarly situated comparator outside his protected classes was treated differently under similar circumstances.

## 2. Disparate Treatment from Similarly Situated Comparators

A plaintiff is "not required as a matter of law to point to a similarly situated comparator to succeed on a discrimination claim." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010), *see also Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 545–46 (4th Cir. 2003). But where, as here, "a plaintiff attempts to rely on comparator evidence to establish circumstances giving rise to an inference of unlawful discrimination," the plaintiff must demonstrate at trial that the comparator is similarly situated in all relevant respects. *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 748 (4th Cir. 2017).

Therefore, a plaintiff must allege facts showing that she is "similar in all relevant respects to [her] comparator." *Haywood*, 387 F. App'x at 359. This includes "that the

employees 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Id.* (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)); *see Sawyers v. United Parcel Serv.*, 946 F. Supp. 2d 432, 442 n.10 (D. Md. 2013). While the comparison "'will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same set of circumstances,'" *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223–24 (4th Cir. 2019) (citation omitted), "[i]f a plaintiff wishes to prove that a defendant's legitimate, non-discriminatory explanation is pretext by pointing to other employees who were treated differently, '[t]he similarity between comparators . . . must be clearly established in order to be meaningful.'" *Swaso*, 698 F. App'x at 748 (citation omitted). Thus, a complaint's conclusory assertions that the plaintiff and a coworker are on equal footing is insufficient to nudge a discrimination claim across the line from conceivable to plausible. *Id.*

With respect to her claim that she "was immediately moved towards termination and ultimately forced to resign" after the trial board, Plaintiff's Amended Complaint refers to ten white and two non-Black comparators, including five comparators previously rejected by this Court (ECF No. 15 at 19–20), in an effort to support an inference that Defendant unlawfully discriminated against her. (ECF No. 20 ¶ 54.) Simply stated, none of the proffered comparators are availing, as none were accused of and found guilty following a trial board of misconduct similar to Plaintiff.

Beginning with the five previously rejected by this Court, the proffered comparators' misconduct varies widely—from one white male accused of using a racial slur, one white male

accruing multiple DUIs and a fleeing and eluding police charge, one white male accused of using excessive force; one white female accused of a domestic related assault involving false statements to the Hartford County Sheriff's Office, and one "non-Black"[12] officer—Koushall—"found guilty of assault and misconduct after his trial board (related to the August 2018 incident) hearing concluded." (*Id.*) While Plaintiff adds additional allegations with respect to the white female and Koushall, the Amended Complaint offers no additional detail with respect to the first three officers. As this Court noted previously, these three officers are not appropriate comparators. (ECF No. 15 at 20.)

With respect to the white female accused of a domestic related assault involving false statements to the Hartford County Sheriff's Office, Plaintiff's Amended Complaint adds that the officer was involved in a domestic related assault with her husband, a fellow law enforcement officer, and each officer was "charged with making false statements to the Hartford County Sheriff Deputies." (ECF No. 20 ¶ 54.) While like Plaintiff, the white female officer was "suspended," the "charges [against the white female officer] were dropped due to what was referred to as an improper investigation by the investigating detective." (*Id.*) In other words, unlike Plaintiff, charges against the white female officer for making "false

---

[12] Given the posture of the case, the Court normally assumes the truth of the allegations in the Amended Complaint. *See Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019). Appearing to respond to footnote 8 in this Court's prior Memorandum Opinion, which stated Koushall was "also Black" (ECF No. 15 at 20 n.8), Plaintiff's Amended Complaint refers to Koushall as "non-Black/male." (ECF No. 20 ¶ 54.) The same is repeated in Plaintiff's response. (ECF No. 24-1 at 6.) In this instance, the Court is inclined to question whether Plaintiff's allegation with respect to Koushall's race is entitled to the assumption of truth, *cf. Iqbal*, 556 U.S. at 680 (indicating that the first step in reviewing complaints under Rule 12(b)(6) is to identify the allegations entitled to the assumption of truth), as this representation is inconsistent with representations Plaintiff's counsel Dionna Marie Lewis of the District Legal Group, PLLC made to Judge Maddox of this Court in Wiggins' earlier filed, now dismissed case relating to the same incident. *Wiggins v. Balt. Police Dep't*, No. EA-22-1089, 2023 U.S. Dist. LEXIS 174936, 2023 WL 6381515 (D. Md. Sep. 29, 2023) (quoting from Wiggin's complaint filed by Plaintiff's counsel: "Plaintiff observed a black male police officer, . . . later identified as Sgt. Marlon Koushall[.]").

statements to the Hartford County Sheriff Deputies" were never sustained by a trial board. (*Id.*)  Accordingly, the white female officer is not an appropriate comparator.

With respect to Koushall, Plaintiff contends that Koushall "made multiple false statements to the Department during his trial testimony in reference to the August 2018 incident," and "also gave false testimony during the administrative hearing."  (*Id.*)  Critically, however, Plaintiff does not contend that Koushall was charged with making false statements— the charge leading to Plaintiff's termination.  Rather, she alleges that Koushall "was found guilty of assault and misconduct after his trial board (related to the August 2018 incident) hearing concluded."  (*Id.*)  While Plaintiff insists that Koushall made false statements and provided false testimony, (*id.*), he was not charged for such conduct, nor were such charges considered by a trial board.  Accordingly, Koushall is not an appropriate comparator.

Plaintiff's Amended Complaint adds additional comparators, who are also unavailing. As with the previously proffered comparators, several of the comparators offered were not charged with similar conduct to Plaintiff, including a white male who "physically assaulted" another law enforcement officer "but was not charged with any misconduct," and a white female officer charged with "disorderly conduct and misconduct" after she was found drunk and disorderly at a bar.  (*Id.*)  These are not appropriate comparators.

While Plaintiff insists that some of the additional comparators made false statements, she does not allege that they were charged—as Plaintiff was—and the charges sustained by a trial board—as the charges against Wanda Johnson for assault, for failing to notify her supervisors, and for making false statements on two separate occasions were.  These include a white female who had "several sustained uses of force and false statement charges brought

against her," a non-Black female officer who "made a false statement . . . in an attempt to file a fraudulent worker's compensation claim" who was never charged for her actions, and Detective Gertz's allegedly false testimony during Plaintiff's trial board. (*Id.*)

Only two of the newly added comparators were found guilty by a trial board. First, a white male officer was "found guilty" by a trial board after he breached protocol following a car accident in his BPD vehicle after he "failed to report the incident, opting instead to go home." (*Id.*) Plaintiff complains that his actions "warrant more stringent consequences," though the officer "was only demoted . . . and . . . neither terminated nor forced to resign." (*Id.*) However, this proffered comparator was not accused of misconduct similar to the findings of misconduct sustained against Plaintiff—namely, assault, failing to notify her supervisors of the assault, and for making false statements on two separate occasions related to an investigation.

Lastly, Plaintiff points to a white male officer who "was internally charged for tampering with an internal investigation and making false statements . . . attempt[ing] to protect Sgt. Koushall." (*Id.*) According to the Amended Complaint, "[t]he case against [this officer] was sustained twice . . . but . . . was overturned . . . by . . . the Deputy Commissioner of [the] Public Integrity Bureau." (*Id.*) Plaintiff complains that "there is email evidence to substantiate the original finding" but the officer "was never forced to resign or suffer any consequences for his misconduct." (*Id.*) Unlike Plaintiff, the charges against this officer were overturned. Accordingly, the white male officer who Plaintiff alleges "conspired . . . to protect Sgt. Koushall" is not an appropriate comparator. (*Id.*)

In sum, the facts alleged in the Amended Complaint regarding the twelve proposed

comparators who were "suspected of misconduct or other severe offenses were not subjected to the same punishment" are insufficient to provide a plausible basis for the proposition that any of the purported comparators both were actually similarly situated to Plaintiff and received more favorable treatment than Plaintiff. As the facts in the Amended Complaint are ultimately inadequate to support a reasonable inference that BPD engaged in unlawful discrimination by taking an adverse employment action against Wanda Johnson based on her race, Plaintiff has failed to state a plausible claim of discrimination under Title VII. Accordingly, Defendant's Motion to Dismiss the Amended Complaint (ECF No. 23) will be granted as to Count I, which is DISMISSED WITH PREJUDICE.

### C. Plaintiff's Hostile Work Environment Claim (Count II)

To allege a claim of hostile work environment, a plaintiff must sufficiently allege that the challenged conduct was (1) "unwelcome;" (2) based on a protected class; (3) "'sufficiently severe or pervasive' to alter the conditions of her employment;" and (4) "imputable to her employer." *Pueschel v. Peters*, 577 F.3d 558, 564–65 (4th Cir. 2009). Only harassment that occurs "because of" an individual's protected status can be used to support a hostile work environment claim. *Hartsell v. Duplex Prods.*, 123 F.3d 766, 772 (4th Cir. 1997). The Court examines whether Plaintiff pleads facts to support that her race was a motivating factor in the unwelcome conduct, and specifically if that factual support raises the allegation above a speculative level. 42 U.S.C. § 2000e-2(m); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015).

Looking to the Amended Complaint,[13] Plaintiff's allegations of workplace harassment include her claim that "Internal Affairs Detectives chose to fabricate allegations against [her]," and that other officers "ma[de] false accusations and assumptions about Plaintiff," suggesting a widespread conspiracy against Plaintiff and her husband, and her coworkers "question[ed] Plaintiff [about] how she got into a fight, how she could do that, [and whether anyone] would ever want to work with and/or for Plaintiff' "as a result of all the rumors."  (ECF No. 20 ¶¶ 34, 54, 56–57, 60.)  Considering the relevant facts in the light most favorable to Plaintiff, the allegations in the Complaint are conclusory and merely speculate that Plaintiff's race was a motivating factor.  There are general and conclusory statements in paragraphs 106 through 114 that the "actions and conduct of the above-described perpetrators as set forth herein created a hostile, offensive and intimidating work environment based upon Plaintiff's race and detrimentally affected Plaintiff" and the "actions and conduct by the above-described perpetrators . . . were severe and pervasive and constituted discrimination based on race." Wanda Johnson has wholly failed to plead any specific facts to allege any specific nexus between the alleged mistreatment and her protected status.  The Court is not obligated to "fill in the gaps" as to the basis for alleged discriminatory behavior.  *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).  Accordingly, Plaintiff's hostile work environment claim under Title VII (Count II) falls short of the plausibility standard required under *Iqbal* and *Twombly* and is therefore DISMISSED WITH PREJUDICE.

---

[13] Plaintiff's response to the Defendant's Motion to Dismiss the Amended Complaint provides little clarity to the conduct giving rise to her hostile work environment claim.  (*See* ECF No. 24.)

### D. Plaintiff's Retaliation Claim (Count III)

In her Amended Complaint, Plaintiff contends that she "faced retaliation for the complaint she submitted internally with the [Defendant's PIB], and then externally with the EEOC," which were filed on May 31, 2022, and February 16, 2021, respectively. (ECF No. 20 ¶ 8, 67, 117.) Title VII prohibits an employer from discriminating against an employee "because[s]he has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). The elements of a retaliation claim are: "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *Mackey v. Shalala*, 360 F.3d 463, 469 (4th Cir. 2004)). BPD contends that Plaintiff's retaliation claim should be dismissed because Plaintiff failed to plead facts to satisfy the second and third elements. (ECF No. 23-1 at 10–11; ECF No. 27 at 4–5.)

Considering the second element, in a retaliation claim, the standard for an adverse action is more lenient than for a substantive discrimination claim. *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006) ("[T]he antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment."). An action is adverse in the retaliation context if it might "have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern*, 548 U.S. at 68 (quotation marks and citations omitted). Having found that Plaintiff satisfied the adverse action requirement with respect to her discrimination claim, this Court finds that Plaintiff's Amended Complaint satisfies the lower threshold for adverse action in the retaliation context considering Plaintiff's claim that she was "forced" to resign in

June 2022.[14]

Nevertheless, Plaintiff's retaliation claim fails because she fails to plausibly allege a causal link between the protected activity and any adverse action.  Plaintiff must demonstrate a "but-for" connection between the protected activity—the February 16, 2021 EEOC charge and the May 31, 2022 internal complaint—and the adverse employment action—her forced resignation in June 2022.  *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). Plaintiff may achieve this through providing evidence of temporal proximity, or "the existence of other facts that alone, or in addition to temporal proximity, suggests that the adverse employment action occurred because of the protected activity."  *Johnson v. United Parcel Serv., Inc.*, 839 F. App'x 781, 784 (4th Cir. 2021).  "Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."  *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006).  As the Court noted in its prior Memorandum Opinion (ECF No. 15 at 21–24), BPD notified Plaintiff that she was being investigated in relation to the August 2018 incident sometime around June 2019.  (ECF No. 20 ¶ 40.)  That is, the investigation that led to Plaintiff's suspension with pay and culminated with Plaintiff's "forced" resignation began well before she alleges to have engaged in protected activity. Accordingly, Plaintiff's retaliation claim under Title VII (Count III) falls short of the

---

[14]  In her response, Plaintiff further contends that BPD's "withhold[ing] [of] her case file . . . until a month before her trial board hearing" constitutes an adverse action.  (ECF No. 24-1 at 7.)  As noted above, the Supreme Court has explained that an action is adverse in the retaliation context if it might have dissuaded a reasonable worker from making or supporting a charge of discrimination.  *Burlington Northern*, 548 U.S. at 68l *see also Noonan v. Consolidated Shoe Co.*, 84 F.4th 566, 575 (4th Cir. 2023).  Moreover, even if BPD's withholding of the case file constituted an adverse action, the Amended Complaint fails to plausibly allege a causal link between the protected activity and the adverse action.

plausibility standard required under *Iqbal* and *Twombly* and is therefore DISMISSED WITH PREJUDICE.

## II.    Plaintiff's § 1983 *Monell* Claim (Count IV)

Pursuant to 42 U.S.C. § 1983, a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See, e.g.*, *Filarsky v. Delia*, 566 U.S. 377 (2012); *Owens v. Balt. City State's Attorney's Off.*, 767 F.3d 379 (4th Cir. 2014). However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017).

Simply stated, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999). To state a claim under § 1983, a plaintiff must allege that a person acting under color of state law deprived him of a constitutional right or a right conferred by a law of the United States. *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Safar*, 859 F.3d at 245 ("The first step in any such claim is to pinpoint the specific right that has been infringed."). "The statutory color-of-law prerequisite is synonymous with the more familiar state-action requirement—and the analysis for each is identical." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

In *Monell v. Department of Social Services*, the Supreme Court concluded that Congress

intended "municipalities and other local government units to be included among those persons to whom § 1983 applies." 436 U.S. 658, 690 (1978). The Court further explained that "[l]ocal governing bodies [] can be sued directly under § 1983 for monetary, declaratory, or injunctive relief, where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* A state agency, however, cannot be sued under § 1983 because a state agency is not a "person" under 42 U.S.C. § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 67 (1989).

In *Chin v. City of Baltimore*, 241 F. Supp. 2d 546 (D. Md. 2003), this Court held that BPD is subject to suit for violation of § 1983 because it "is too interconnected with the government of the City" to constitute a state agency. *Id.* at 548. This Court has repeatedly affirmed the holding in *Chin. See, e.g., Nicholson v. Balt. Police Dep't*, No. DKC-20-3146, 2021 WL 1541667, 2021 U.S. Dist. LEXIS 75798, at *16 (D. Md. Apr. 20, 2021) (holding that "the BPD, while a state entity under Maryland law, is considered a municipal entity subject to suit for purposes of § 1983"); *Fish v. Mayor of Balt.*, No. CCB-17-1438, 2018 WL 348111, 2018 U.S. Dist. LEXIS 4222, at *9 (D. Md. Jan. 10, 2018) (holding that "BPD is not entitled to Eleventh Amendment immunity and, as a result, is a 'person' subject to suit under § 1983"). Accordingly, for purposes of an action for violation of § 1983, BPD is a local government entity.

To state a § 1983 claim against a municipality, a plaintiff must "adequately plead . . . the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994); *see also Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999) (stating that "it is by

now well settled that a municipality is only liable under section 1983 if it causes such a deprivation through an official policy or custom"). However, "a municipality cannot be held liable . . . under § 1983 on a respondeat superior theory." *Monell*, 436 U.S. at 691. Municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."[15] *Id.* at 694.

A plaintiff may allege four types of policies, customs, or practices for which a municipality may be held liable: "(1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifest[s] deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter*, 164 F.3d at 217). Regardless of which theory a plaintiff proceeds under, a plaintiff asserting a § 1983 claim against a municipality must plead factual content that would allow the Court to draw a reasonable inference that: (1) the plaintiff has suffered a deprivation of a constitutional right; and (2) the violation of that right was caused by the enforcement of a municipal. *See Monell*, 436 U.S. at 694; *Spell v. McDaniel*, 824 F.2d 1380, 1389 (4th Cir. 1987).

In Count IV, Plaintiff alleges that BPD "unlawfully deprived Plaintiff of her civil rights in violation of Sections 1981 and 1983 of the Civil Rights Act and the First Amendment when it retaliated against Plaintiff for having engaged in protected activity by complaining of

---

[15] Baltimore Police Department "is a 'person' subject to suit under § 1983" and "does not enjoy sovereign immunity for purposes of a § 1983 claim." *Gaines v. Balt. Police Dep't*, 657 F. Supp. 3d 708, 749 (D. Md. 2023) (citation omitted).

discrimination on the basis of her race, thereby punishing Plaintiff for exercising her rights and discouraging her as well as others from continuing to exercise such rights in the future." (ECF No. 20 ¶ 139.)  As noted in the Court's prior Memorandum Opinion, (ECF No. 15 at 25–28), the Court can dispose of Plaintiff's *Monell* claim without substantial analysis.  This is because, like the original complaint (ECF No. 1), Plaintiff's Amended Complaint (ECF No. 20) does not specify a policy, custom, or practice for which BPD may be held liable.  The Court notes that the Amended Complaint does not cure this deficiency previously noted by this Court.  (ECF No. 15 at 25–28; *compare* ECF No. 1 *with* ECF No. 20.)  Like the original complaint, the Amended Complaint refers to "the pervasive culture and custom within BPD of treating African American Officers differently than White Officers when it came to promotions, disciplinary actions, and conduct," (ECF No. 20 ¶ 152), and briefly notes an August 2016 report by the U.S. Department of Justice detailing BPD's "widespread constitutional violations, the targeting of African Americans, and a culture of retaliation."  (*Id.* ¶ 1.)  The Amended Complaint adds that:

> It is well known throughout the Department that BPD routinely suspends officers for extended periods, keeps them in the dark during false investigations, and ultimately forces them out of the Department.  Black officers, in particular, have been targeted and have suffered these injustices for far too long; Plaintiff and her husband were not the only ones affected by this systemic mistreatment.

(*Id.* ¶ 79.)  Nevertheless, the only individuals alleged in the Amended Complaint to have suffered the sort of discriminatory treatment Plaintiff claims she suffered are Wanda and Marcus Johnson.  In short, her allegations are insufficient to allege the existence of a policy or custom, the "extent" of which is "widespread or flagrant" enough for a condonation claim. *See Owens*, 767 F.3d at 403 (quoting *Spell*, 824 F.2d at 1387).  As such, Count IV is DISMISSED

WITH PREJUDICE.

### III.    Plaintiff's MFEPA Claim (Count V)

With respect to Plaintiff's MFEPA claim, Defendant first contends[16] that it has sovereign immunity against such claims.  (ECF No. 23-1 at 13–14; ECF No. 27 at 5–6.)  In other words, BPD presents a facial challenge to this Court's subject matter jurisdiction over Wanda Johnson's MFEPA claim, arguing that it is immune to suit in federal court under the Eleventh Amendment to the United States Constitution.  *See Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) (holding that sovereign immunity deprives the court of subject matter jurisdiction).  In her responsive filing, Plaintiff includes a citation to MD. CODE., STATE GOV'T § 20-903, which reads: "The State, its officers, and its units may not raise sovereign immunity as a defense against an award in an employment discrimination case under this title."  (ECF No. 24-1 at 8.)  While at first glance this may seem to indicate that Defendant has waived its sovereign immunity over Plaintiff's MFEPA claim, based on additional statutory provisions of the Maryland Code and an abundance of authority in this District, the doctrine of sovereign immunity nevertheless shields BPD from Plaintiff's MFEPA state law claim even if Defendant has waived its sovereign immunity defense in other federal law contexts.  *See* MD. CODE, STATE GOV'T. § 20-1013(b) ("A civil action under this section shall be filed *in the circuit court for the county* where the alleged unlawful employment

---

[16]  In addition to its challenge under Rule 12(b)(1), BPD further argues that, as MFEPA is the state analogue of Title VII, Plaintiff also fails to allege sufficient facts to support an inference that any conduct she endured at BPD was on account of her race or protected activity.  (ECF No. 23-1 at 13–14; ECF No. 27 at 5–6.)  As the Court explained in its prior Memorandum Opinion, (ECF No. 15 at 24), MFEPA is the state analogue of Title VII.  As such, Maryland courts "traditionally seek guidance from federal cases in interpreting [MFEPA]." *Haas v. Lockheed Martin Corp.*, 914 A.3d 735, 742 (Md. 2007).  As explained in Part I.B–D *supra*, Plaintiff fails to allege sufficient facts to support an inference that any conduct she endured at BPD was on account of her race or protected activity.

practice occurred.") (emphasis added); *Grant v. Balt. City Police Dep't*, No. RDB-21-2173, 2022 WL 16746703, 2022 U.S. Dist. LEXIS 203300, at *24–26 (D. Md. Nov. 7, 2022); *Effland v. Balt. Police Dep't*, No. CCB-20-3503, 2022 U.S. Dist. LEXIS 139867, 2022 WL 3107144, at *6–7 (D. Md. Aug. 4, 2022); *Bumgardner v. Taylor*, No. RDB-18-1438, 2019 U.S. Dist. LEXIS 53759, 2019 WL 1411059, at *6 (D. Md. Mar. 28, 2019); *Fish v. Mayor of Balt.*, No. CCB-171438, 2018 U.S. Dist. LEXIS 4222, 2018 WL 348111, at *3 (D. Md. Jan. 10, 2018). Accordingly, Plaintiff's MFEPA claim must be rejected, and Count V is DISMISSED WITH PREJUDICE. *Garcia v. Balt. Police Dep't*, No. CV BPG-22-1423, 2023 U.S. Dist. LEXIS 70336, 2023 WL 3043953, at *7 n.2 (D. Md. Apr. 21, 2023) ("[D]efendant [BPD] is entitled to sovereign immunity and cannot be liable for the violated alleged by plaintiff under the MFEPA. No amendment of the complaint, therefore, would cure that defect.").

## CONCLUSION

For the reasons stated above, Defendant Baltimore Police Department's Motion to Dismiss the Amended Complaint (ECF No. 23) shall be GRANTED, and Plaintiff Wanda Johnson's Amended Complaint (ECF No. 20) is DISMISSED WITH PREJUDICE.

A separate Order follows.

Date: January 6, 2025                              _____/s/_____
                                                  Richard D. Bennett
                                                  United States Senior District Judge